PEOPLE *v.* MENTON.

1. CRIMINAL LAW—ASSISTANCE OF COUNSEL—WAIVER OF RIGHT TO
   COUNSEL.
   Claim of defendant, who pled guilty to uttering and publishing
   a forged check, that he was entitled to a new trial because not
   represented by counsel at his arraignment and sentencing *held,*
   without merit, where the record establishes that, at arraign-
   ment, the trial court advised defendant of his right to counsel,
   including his right to appointed counsel if he did not have
   funds to hire counsel of his own choosing, and then asked
   defendant if he desired counsel to which defendant replied
   "no," since such record clearly established that defendant in-
   telligently and understandingly waived his right to counsel
   (CL 1948, § 750.249).

2. SAME—ASSISTANCE OF COUNSEL—REQUEST FOR COUNSEL.
   Claim of defendant, who pled guilty to uttering and publishing
   a forged check, that he was entitled to a new trial because
   given no opportunity by the trial court to request counsel *held,*
   without merit, where the record discloses that the trial court
   properly advised defendant of his right to counsel, and then
   asked if defendant desired to talk to an attorney to which
   defendant said "no," since, under the record presented, the
   difference between an opportunity *to talk to* and *to request*
   an attorney was solely one of semantics (CL 1948, § 750.249;
   GCR 1963, 785.3[1]).

3. SAME—COURT RULES—PLEA OF GUILTY—CONSEQUENCES OF PLEA.
   Claim of defendant, who pled guilty to a charge of uttering and
   publishing a forged check, that he was entitled to a new trial
   because the trial court failed to comply with the applicable
   court rule requiring that he be advised as to the possible

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  21 Am Jur 2d, Criminal Law §§ 316, 317.
[3]  21 Am Jur 2d, Criminal Law § 487.

consequences of his plea *held*, without merit, where the record reveals that the court not only explained to defendant the nature of the accusations against him, but also informed him that he could be sent to prison if found guilty either by trial or his own plea, and, during the course of sentencing, informed defendant that the maximum sentence was 14 years in prison (CL 1948, § 750.249; GCR 1963, 785.3[2]).

Appeal from Wexford; Peterson (William R.), J. Submitted Division 3 April 4, 1967, at Grand Rapids. (Docket No. 2,929.)    Decided June 27, 1967.

Kenneth Menton pleaded guilty to, and was convicted of, uttering and publishing a forged check. Defendant appeals.    Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Edward W. Ten Houten,* Prosecuting Attorney, for the people.

*Robert A. Burns,* for defendant.

Holbrook, J.    Defendant was arraigned on February 25, 1966, in the Wexford county circuit court on a charge of uttering and publishing a forged check.* He waived his right to court appointed counsel by refusing the same and voluntarily pleaded guilty to the charge.

On March 28, 1966, the defendant was placed on probation for a period of 2 years (including an initial 6-month jail sentence with day parole); ordered to pay court costs in the amount of $240 at $10 per month, make restitution to his father[1] and pay certain sums of money for fines and costs to recorder's court in the city of Cadillac.

Defendant broke several conditions of his probation in August of 1966.    On August 26, 1966, the

---

* CL 1948, § 750.249 (Stat Ann 1962 Rev § 28.446).—Reporter.

[1] Defendant passed numerous checks over a 3-week period by availing himself of his father's checkbook and writing his father's signature.

trial court revoked defendant's probation and sentenced him to a prison term of 3–1/2 to 14 years, with credit for time served in the county jail.

Appeal to this Court is made by the defendant, raising 3 questions as follows: (1) Whether he expressly (intelligently and understandingly) waived his right to counsel; (2) whether the trial court gave him an opportunity to request counsel; and (3) whether the trial court informed him of the consequence of his plea pursuant to GCR 1963, 785.3(2).

Defendant asserts that he did not expressly waive his right to counsel and that no opportunity was given him to request counsel.[2] In making these assertions, defendant relies on the cases of *People* v. *Hobdy* (1966), 5 Mich App 275; *People* v. *Hilko* (1966), 5 Mich App 166; and *People* v. *Winegar* (1966), 4 Mich App 547.

On arraignment the following colloquy occurred between the trial judge and the defendant:

*"The Court.* \* \* \* You are entitled to have your trial before a jury of 12 people from around the county. And you are entitled to have the assistance at such a trial of an attorney who would handle the matter as far as the legal forms are concerned and would be your spokesman in court. As a matter of fact, you are entitled to have the advice of an attorney if you have any question whatsoever as to your rights as to what your procedure ought to be today or if you have any other question whatever about the nature of this charge. You understand this?

*"Defendant.* Yes, sir.

*"The Court.* Now if you are unable to provide an attorney at your own expense and if you wish one, we will provide one for you at public expense. It is obvious the right is worthless if you don't have

---

[2] See GCR 1963, 785.3(1).—REPORTER.

means of getting an attorney. Have you talked to an attorney about your case?

"*Defendant.* No I haven't.

"*The Court.* Do you wish to do so before we proceed any further?

"*Defendant.* No."

We read this colloquy as an express waiver of defendant's right to counsel. In *Hodby, supra,* the trial court's inquiry was limited to whether the defendant understood his right to representation by counsel and court appointed counsel on proper request—an affirmative reply being made to that limited inquiry was found by this Court not to constitute an express waiver of the right to counsel. Also, see *People v. Parshay* (1967), 379 Mich 7, a recent and analogous case. In our case, however, defendant Menton was asked by the trial judge whether he wished to talk to an attorney before further proceedings were taken. We find his "no" answer as an express (intelligent and understanding) waiver of the right to counsel. In this respect the record in this case is not "a silent record" as to waiving benefit of counsel. *Carnley v. Cochran* (1962), 369 US 506 (82 S Ct 884, 8 L ed 2d 70); *People v. Parshay, supra.*

We also read the above colloquy as affording the defendant an opportunity to request counsel. *People v. Hilko, supra,* quoted *People v. Atkins* (1966), 2 Mich App 199, 202, 203 at p 168 as follows:

"This court holds that the trial court should have inquired of the defendant whether or not he wished counsel, and, if so, have given him an opportunity to obtain the advice of such counsel."

Defendant's contention here is that the trial court only asked whether he wished *to talk to an attorney* and not whether he wished *to request an attorney.* The obvious import of the trial court's question goes

to defendant's desire or nondesire to have counsel. We find the trial judge to have afforded defendant Menton "an opportunity to request counsel"—the difference between an opportunity *to talk to* and *to request an attorney* being solely one of semantics in this particular instance.

Defendant claims the trial judge failed to comply with GCR 1963, 785.3(2) on imposing sentence. This court rule in effect at defendant's arraignment and sentencing reads in part as follows: "If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea." .

The record in the case at hand, unlike that of *People* v. *Winegar, supra,* is not devoid of any reference to the crime charged—*i.e.,* "the nature of the accusation." The trial judge informed defendant that "uttering and publishing charges you with handling and passing a check which you knew was forged or was otherwise fraudulent or counterfeit. You are not actually charged with the forgery yourself."

Likewise, the record indicates that on 2 occasions the trial judge informed defendant of the consequence of his plea:

"*The Court.* You understand that this information charges you with the violation of the criminal laws of the State of Michigan for which, if you were found guilty either by trial of your own plea, *you could be sent to prison?*

"*Defendant.* Yes, sir.    *   *   *

"*The Court.* You understand that *you could be sent to prison* if you are found guilty of this charge?

"*Defendant.* Yes, sir." (Emphasis supplied.)

And at the time of sentencing defendant, the trial judge stated:

"If you violate any of these rules or if you get in any more trouble, we are entitled to terminate your probation, and then you will face exactly what you faced when you walked in here this morning, and that is a sentence which could be for up to 14 years."

That the trial judge advised defendant of the consequence of his plea is evidenced from these statements. The record is not inadequate in this regard as was the case in *People* v. *Johnson* (1966), 2 Mich App 182 and *People* v. *Curtis Lee Williams* (1966), 2 Mich App 232.

Defendant Menton was advised that as a consequence of his guilty plea *he could be sent to prison.* In *People* v. *Shaffer* (1966), 4 Mich App 192, this Court found compliance on the part of the trial judge with GCR 1963, 785.3. There the trial judge stated to that defendant: "I advise you, this is a serious charge, and if you plead guilty or if you are found guilty after a trial, *you will be sent to prison* for having committed the offense." (Emphasis supplied.) The statements by the trial judge in the instant case, to the effect that defendant Menton could go to prison are almost identical to that in *People* v. *Shaffer, supra.*

We conclude that defendant was advised of the nature of the accusation and the consequence of his plea and that the trial court complied with the mandate of GCR 1963, 785.3(2).

Affirmed.

BURNS, P. J., and RYAN, J., concurred.