## PEOPLE *v.* CREGER

False Pretenses—Elements of Crime.

   Intent to defraud is one of the necessary elements of the crime of obtaining money by false pretenses and a plea of guilty to a charge of this crime should not be accepted where the examination of defendant by the court shows that defendant denied having fraudulent knowledge and consequently an intent to defraud.

Appeal from Lenawee, Rex B. Martin, J. Submitted Division 2 January 9, 1969, at Lansing. (Docket No. 5,444.) Decided February 24, 1969.

Reference for Points in Headnote
32 Am Jur 2d, False Pretenses § 33.

Jack Creger was convicted of obtaining money by false pretenses. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harvey A. Koselka,* Prosecuting Attorney, for the people.

*Dan R. Bruggeman,* for defendant on appeal.

BEFORE: Quinn, P. J., and McGregor and V. J. Brennan, JJ.

V. J. Brennan, J. Defendant appeals his conviction pursuant to a guilty plea for obtaining money by false pretenses, CLS 1961 § 750.218 (Stat Ann 1962 Rev § 28.415).

Defendant alleges several grounds for reversal, but we consider only one, since that is dispositive of the case. Whenever an accused pleads guilty, it is the duty of the court under GCR 1963, 785.3(2) to "inform the accused of the nature of the accusation and the consequence of his plea," and to "ascertain that the plea was freely, understandingly, and voluntarily made."

Following are the crucial portions of the record of the trial court's examination of defendant after he had declined representation by counsel:

*"The Court:* Do you understand that you're charged here with having obtained $128 from the State of Michigan using false pretenses?

*"Defendant[1] Creger: Yes, I don't, I didn't understand about the false pretenses of it. I mean, under*

---

[1] Defendant is called respondent in the transcript. CL 1948, § 612.1 (Stat Ann § 27.653), and, now, GCR 1963, 201.1 and 785.1, require that parties to an action be designated as plaintiff or defendant.

*the circumstances that I got the check, no.* (Emphasis added.)

"*The Court:* I don't—Mr. Koselka, could you tell me what the basis of this was?

"*Mr. Koselka* [*Prosecuting Attorney*]: Yes, what he did, he obtained public funds on the basis that he was not receiving any unemployment compensation or other benefits whatsoever. He made these representations.

"*The Court:* Do you understand that?

"*Defendant Creger:* Yeah.

"*The Court:* In other words, you obtained money from the State of Michigan after having told this agent that you weren't receiving money from any other sources when you actually were receiving money from other sources.

"*Defendant Creger:* Yes, I did this on the money from the unemployment.

"*The Court:* Do you understand this is the charge placed against you?

"*Defendant:* Yes.

"*The Court:* And how do you plead to that charge?

"*Defendant Creger:* I'm guilty.

\*     \*     \*

"*Defendant Creger:* Well, I had been drawing this previous to the State, which I had been held up on my unemployment, discharge from the Products.

"And I received this money from the Products, this back pay that they had been holding up at the unemployment office around the 9th of September, or the 10th and the 16th.

"See, every 1st and 16th I was receiving $128 from this.

"*The Court:* Then on the 16th you got $128 more?

"*Defendant Creger:* Yes, that came from this A. D. C. U.[2]

---

[2] Aid to Dependent Children of the Unemployed.

*"The Court:* You didn't turn it back to them?

*"Defendant Creger:* No, I didn't. She called me in the office and asked me how come I hadn't reported this other money.

"And I told her I don't know why. Actually I didn't. And she said, 'Well, you may get a check on the 16th and then again you may not, but it is a violation,' she said, 'and I have to send to Lansing and see what they're going to do.' She never said to send the check back.

*"The Court:* When you first started drawing money from A. D. C., you were told you couldn't draw money from other sources, weren't you?

*"Defendant Creger:* Yes, I was told I should report any type of earnings.

*"The Court:* And you didn't report this earnings?

*"Defendant Creger: No, I didn't think it was earnings. I mean it was unemployment, I figured what they meant by earnings was going out and working for it.* (Emphasis added.)

*"The Court:* Didn't they tell you any income from any source?

*"Defendant Creger:* They said income, yes, I understood that.

*"The Court:* From any source?

*"Defendant Creger:* Yes.

*"The Court:* Wasn't this income?

*"Defendant Creger:* Yes, I see that now.

*"The Court:* What happened to the $128?

*"Defendant Creger:* I paid my rent and bought groceries and that.

*"The Court:* You spent it?

*"Defendant Creger:* Yes, sir. I told them later I was willing to pay it back.

*"The Court:* All right. The court will accept the plea of the respondent as having been freely and voluntarily given with full knowledge of his constitutional rights."

It is felt in this case that the court sought to apprise and inform the defendant fully of the nature

and elements of the offense; however, the defendant more than once on this record qualified the plea and negated his guilt as far as the fraudulent knowledge aspect of the offense was concerned. One of the necessary elements of the crime of false pretenses is an intent to defraud. *People* v. *Bagwell* (1940), 295 Mich 412, 416; *People* v. *Lee* (1932), 259 Mich 355, 356; *People* v. *Richard E. Johnson* (1967), 8 Mich App 204, 210.

Reversed and remanded.

All concurred.