## PEOPLE *v.* NELSON

1. CRIMINAL LAW—PLEA OF GUILTY—WITHDRAWAL—MISCARRIAGE OF JUSTICE.

   A motion to vacate a guilty plea after conviction and sentence is addressed to the discretion of the court, and must be based on a showing of a miscarriage of justice.

2. CRIMINAL LAW—DUE PROCESS—PRESUMPTION OF INNOCENCE—BURDEN OF PROOF.

   A convicted defendant no longer enjoys the presumption of innocence, and he has the burden of showing something more than technical noncompliance with the court rules in order to vacate a guilty plea.

3. CRIMINAL LAW—RIGHT TO ASSISTANCE OF COUNSEL—WAIVER.

   A defendant intelligently and knowingly waives his rights to assistance of counsel when he well knows that he could have

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 504.
[2] 21 Am Jur 2d, Criminal Law § 505.
[3] 21 Am Jur 2d, Criminal Law § 316.
[4] 21 Am Jur 2d, Criminal Law §§ 487, 489.
[5] 21 Am Jur 2d, Criminal Law § 484 *et seq.*

counsel, either of his own choosing or court appointed, and elects to proceed without counsel.

4. CRIMINAL LAW—CONSEQUENCE OF PLEA—SUFFICIENT ADVICE.
   Trial judge's advice to a defendant that he would be subject to sentence and a possible prison term if he entered a plea of guilty is sufficient advice of the consequence of the defendant's plea of guilty.

DISSENTING OPINION
LEVIN, P. J.

5. CRIMINAL LAW—GUILTY PLEA—ACCEPTANCE—DIRECT QUESTIONING OF ACCUSED.
   *Before accepting a guilty plea a trial judge should by direct questioning of the accused establish that the crime was committed and that the defendant participated in its commission.*

Appeal from Missaukee, William R. Peterson, J. Submitted Division 3 February 12, 1969, at Grand Rapids. (Docket No. 5,235.) Decided June 26, 1969. Rehearing denied September 9, 1969. Application for leave to appeal filed October 15, 1969.

Victor Nelson was convicted on his plea of guilty of assault and unarmed robbery and was placed on probation. Subsequently probation was revoked and he was sentenced to prison. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gary C. Hoffman,* Prosecuting Attorney, for the people.

*Robert A. Burns,* for defendant.

Before: LEVIN, P. J., and HOLBROOK and DANHOF, JJ.

DANHOF, J. Defendant-appellant pled guilty on January 3, 1966, in the circuit court for Missaukee

county to a violation of CL 1948, § 750.530 (Stat Ann 1954 Rev § 28.798), committing an assault and robbery not being armed with a dangerous weapon. On February 9, 1966, defendant was sentenced to 2 years' probation and ordered to make restitution. Subsequently, at a hearing in the same court on December 20, 1967, the probation was revoked and the defendant was sentenced to 3 to 15 years' imprisonment on the original charge. Defendant made a motion to vacate his guilty plea which was denied by the circuit court on July 15, 1968 and defendant now appeals that decision.

The motion filed by the defendant addresses itself to the discretion of the court. *People* v. *Vasquez* (1942), 303 Mich 340. Since the motion is made after conviction and sentence it must be based upon a showing of a miscarriage of justice. *People* v. *Winegar* (1968), 380 Mich 719. Defendant, being convicted, no longer enjoys the presumption of innocence, and he has a burden of showing something more than technical noncompliance with the rules. In fact, he must show that there has been a miscarriage of justice. *People* v. *Winegar, supra.*

We are satisfied from a review of this record that the defendant intelligently and knowingly waived his right to counsel well knowing that he could have had counsel, either of his own choosing or court appointed. Examination of the transcript of the arraignment of the defendant and of a co-defendant, who was arraigned at the same time and on the same charge, reveals that the circuit judge advised the defendant of his right to an attorney, and advised him of his right to either proceed at the present time, or wait for an attorney. The defendant chose to proceed and thereby waived his right to an attorney. *People* v. *Dunn* (1968), 380 Mich 693. Further, the trial judge on several occasions advised the defend-

ant he would be subject to sentence and a possible jail term in the State prison if he entered a plea of guilty. This was sufficient to advise the defendant of the consequence of his plea. *People v. Menton* (1967), 7 Mich App 267; *People v. Jarboe* (1968), 10 Mich App 476; and *People v. Dunn, supra.*

Defendant further alleges that he was not advised of his right to counsel at the time he was placed on probation. In this case the question is one of non-importance since the defendant was represented by counsel, of his own choosing, at the time his probation was revoked and the prison sentence imposed.

The defendant, neither in his brief, nor in his motion for new trial, contends that he is in fact innocent and that there has been a patent miscarriage of justice. It is incumbent upon the defendant to show that an injustice has occurred. *People v. Winegar, supra; People v. Collins* (1968), 380 Mich 131.

Affirmed.

HOLBROOK, J., concurred.

LEVIN, P. J. *(dissenting).* In *People v. Barrows* (1959), 358 Mich 267, 272, the Michigan Supreme Court held that before accepting a plea of guilty a trial judge should by direct questioning of the accused establish that the crime was committed and that the defendant participated in its commission. On the authority of that decision, our Court in recent years has reversed several convictions based upon guilty pleas where the required examination was not conducted. See *People v. Perine* (1967), 7 Mich App 292; *People v. Mason* (1968), 13 Mich App 277; *People v. Richard E. Johnson* (1967), 8 Mich App 204; *People v. Creger* (1969), 16 Mich App 59, 63. See, also, *People v. Taylor* (1968), 9 Mich App

333, 339, leave to appeal granted February 9, 1968;
*People* v. *Crow* (1968), 13 Mich App 594.[1]

In this case an information was filed charging the
defendant and one Wade Jett with unarmed robbery.
At the arraignment on the information both defend-
ants pled guilty. Before accepting their pleas the
trial judge examined them regarding the alleged
offense and their participation in its commission.[2]

---

[1] See Report of the President's Commissioan on Law Enforcement,
Task Force Report: The Courts, p 13; American Bar Association
Project on Minimum Standards for Criminal Justice, Standard
Relating to Pleas of Guilty, § 1.6, pp 30–34.

[2] The following is the full text of the relevant colloquy between
the court and the defendant Nelson:

"*The Court:* Tell me what happened, Mr. Nelson.

"*Mr. Nelson:* Well, from the day we left Lansing we went to
Flint. I have a relation down there and I took a couple gifts to
my cousin and kids. She's divorced and then we were going to go up
to Wayne's [Wade Jett, the co-defendant] cousin, he's got a half-
brother, I guess, in Saginaw. That's where we started from and so
we decided to come on up to see some of my relatives and wish
them a Merry Christmas and head back the next morning. Well,
we got here and on the way between Clare and Saginaw where the
road meets on a wide bend these two fellows were standing outside
the car there, as I come around the curve this one guy holds up his
hand and waves at me and I ask him if he was having trouble and
he said 'yes'. The car wouldn't move—burned up, I guess. I told
them I would drop them off at Houghton Lake. I could do that
much for them. So on the way I said I might as well go on up to
Cadillac and see some relatives first and drop you off on the way back.
And ah, that was all right—so this one boy had two cases of beer
with him so we all started to drinking beer. I don't know which one
it was and ah, off we went and played a game of pool, then we took
off for Houghton Lake and they wanted me to take them on up to
Mackinac, after we had something to eat. So I started up towards
Mackinac, and I said, 'Darn, I ain't going to go up to Mackinac,
it's too darn far'. They wanted to go up to Mustee which is way
past the bridge. So I says, 'I ain't going to go', well, this one guy
in the back seat started getting rough with Wayne back there—
giving him a bunch of sass and I said 'baloney, I just ain't going
to go'. Before all this I had the one boy call a Greyhound to
catch a bus. I tried to get him to catch a bus and he wouldn't do it.
He said he didn't have enough money. That's what he told me.
Anyway he called the bus from the C. and L. Bar down there. And
the bus was supposed to leave in half an hour, but ah, he didn't
catch it. So I know all those roads over there so I went back,
started back towards Cadillac the same way I came over by the Porter
Ranch through Falmouth. I went over that way and I went back
the same way. And ah, Wayne said he was going to take this one
guy's money. And they really didn't say nothing. But before I
stopped them, I made sure I stopped in front of a farm house where

It appears from the transcript of this examination that the defendant, age 28, and Jett, age 20, were on an automobile excursion shortly before the incident leading to their arrest. They intended to visit relatives of the defendant. During this journey they were hailed by two young men who were hitchhiking. The four then proceeded to drive around together meandering for several hours. The defendant stated that one of the hitchhikers had two "cases" of beer and during the journey all four drank beer. They also stopped to play pool.

The hitchhikers then suggested that the defendant, who was driving the car, drive them to Mackinac, a distance of over 100 miles. The defendant headed for Mackinac. There was a change of heart and an argument ensued between Jett and the hitchhikers. Jett admitted that he forced the hitchhikers to give up their luggage. The defendant then stopped to let the hitchhikers out of the car. The hitchhikers called the police and the defendant and Jett were apprehended two hours later.

Nowhere in the examination of Jett or of the defendant (see footnote 2) does it appear that the defendant consented to or participated in a concert of action with Jett against the hitchhikers.[3] For all that

---

I had some heat and stuff and we just proceeded on the same way over that we come. Come that way.

"*The Court:* What happened to the things that they had?

"*Mr. Nelson:* They was all in the suitcase. Everything that's on this list was in the suitcase. And they got everything back.

"*The Court:* And you came on into Cadillac then after you dumped them off?

"*Mr. Nelson:* Yes sir. Right straight.

"*The Court:* All right, I'll accept your plea."

[3] See *People* v. *Burrel* (1931), 253 Mich 321, where it was held that the fact that statutory rape was committed in the back seat of an automobile by another would not render the owner and driver of the car guilty of the offense as an accessory, in the absence of a showing by the prosecutor that he had knowledge that the offense was to be committed, mere knowledge of what was happening when the offense was being committed being insufficient to render him guilty.

appears in the record, the argument between Jett and the hitchhikers was a private argument in which the defendant did not participate and Jett's decision, apparently impulsive, to force the hitchhikers to part with their luggage was Jett's decision alone in which the defendant, who was occupied driving the car at the time, did not participate.

There is no reason to suppose that the defendant and Jett had set out together to perpetrate a crime. Indeed, the transcript leaves one with just the opposite impression. The fact that the defendant continued to drive the car, although he must have been aware of what Jett was doing, and then stopped to let the hitchhikers out of the car is not inconsistent with the defendant's innocence.

Since there is no evidence in the record that the defendant participated in the commission of the crime, the factual basis necessary to support his plea of guilty was not established. To paraphrase the words of the *Barrows* Court (p 272) : the "truth of the plea" was not "reasonably ascertained." This case is distinguishable from *People* v. *Bartlett* (1969), 17 Mich App 205, where, although the defendant himself had not admitted an essential element of the crime, there was other record evidence showing that he had committed it and the probability of his conviction had he stood trial was great. In *Bartlett* the defendant was represented by counsel, the defendant Nelson was not.

Under the circumstances of this case, the proper administration of justice required a more careful and complete examination of the accused than appears in the record for the purpose of showing the defendant's participation in the crime of which he may well, as he claims on this appeal, be innocent.

I would set aside the defendant's plea of guilty and his conviction and remand for trial.