PEOPLE *v.* WINEGAR.

OPINION OF THE COURT.

1. CRIMINAL LAW—ACCEPTANCE OF PLEA OF GUILTY—ASSAULT WITH INTENT TO MURDER—RIGHT TO COUNSEL.

Judgment of trial court accepting defendant's plea of guilty to charge of assault with intent to murder and sentencing defendant to life imprisonment *held,* proper where defendant was informed of his right to counsel and had many opportunities during his arraignment and 2 weeks following arraignment and before his plea to request counsel, and court determined plea was made without undue influence, compulsion, duress, or promise of leniency (CL 1948, § 750.83; Court Rule No 35A[2] [1945]).

2. SAME—WITHDRAWAL OF PLEA OF GUILTY—DISCRETION OF COURT.

Motion to withdraw plea of guilty to crime after conviction and sentence is addressed to the discretion of the court.

--------

REFERENCES FOR POINTS IN HEADNOTES

[1, 10]  21 Am Jur 2d, Criminal Law § 488.
[2, 5]  21 Am Jur 2d, Criminal Law § 504.
[3, 4]  39 Am Jur, New Trial § 30.
[6]  21 Am Jur 2d, Criminal Law § 486 *et seq.*
[7]  21 Am Jur 2d, Criminal Law § 491.
[8]  21 Am Jur 2d, Criminal Law § 505 *et seq.*
[9]  21 Am Jur 2d, Criminal Law § 504 *et seq.*

3. SAME—PROCEDURAL ERROR—MISCARRIAGE OF JUSTICE.

Any procedural error in a criminal case which does not result in a miscarriage of justice is not ground for a new trial or reversal of conviction (CL 1948, § 769.26; GCR 1963, 529).

4. SAME—SHOWING OF MISCARRIAGE OF JUSTICE.

Affidavit by defendant which states that he is innocent of the charge lodged against him (assault with intent to commit murder) as he understands the law in this State does not constitute a showing of miscarriage of justice (CL 1948, §§ 750.83, 769.26).

5. SAME—PLEA OF GUILTY.

A plea of guilty should not be set aside after sentence merely because the record does not show compliance verbatim with court rule requiring the court to inform accused of the nature of the accusation and consequence of his plea (GCR 1963, 785.3[2]).

6. SAME—PLEA OF GUILTY—INVESTIGATION BY JUDGE—PRESUMPTION.

Presumption is that trial judge performed his duty to satisfy himself that defendant understood the nature of an accusation of assault with intent to commit murder and the consequence of a plea of guilty where the judge stated on the record that he found the plea to be freely, understandingly, and voluntarily made, although no record was made of trial judge's conference in chambers with defendant (CL 1948, § 750.83; Court Rule No 35A, § 2 [1945]).

7. SAME—ACCEPTANCE OF PLEA OF GUILTY.

Judicial incompetence or negligence in the matter of accepting a plea of guilty to a charge of crime will not be presumed.

8. SAME — PRESUMPTION OF INNOCENCE — CONVICTION — WITHDRAWAL OF PLEA OF GUILTY.

A defendant convicted of crime no longer enjoys the presumption of innocence and he has the burden of showing something more than technical noncompliance with court rule pertaining to acceptance of plea of guilty, and in order to withdraw a plea of guilty must show sufficient to sustain a finding that there was noncompliance which resulted in a miscarriage of justice (Court Rule No 35A [1945]).

9. SAME—WITHDRAWAL OF PLEA OF GUILTY.

Showing made by defendant's affidavit in support of his motion to withdraw plea of guilty to charge of assault with intent to

murder *held,* insufficient to substantiate claim that plea had not been made freely, voluntarily, and understandingly (CL 1948, § 750.83; Court Rule No 35A[2] [1945]).

DISSENTING OPINION.

SOURIS and ADAMS, JJ.

10. CRIMINAL LAW — PLEA OF GUILTY — ASSAULT WITH INTENT TO MURDER—RIGHT TO COUNSEL.

*Judgment of trial court accepting defendant's plea of guilty to charge of assault with intent to murder and sentencing defendant to life imprisonment was error, where the record shows that defendant was informed of his right to counsel, but his response revealed a lack of comprehension of what the judge was attempting to explain and the record shows no knowing and intelligent waiver (CL 1948, § 750.83; Court Rule No 35A [1945]).*

Appeal from Court of Appeals, Division 1; McGregor, P. J., T. G. Kavanagh and Quinn, JJ., reversing Ingham, Salmon (Marvin J.), J. Submitted October 4, 1967. (Calendar No. 4, Docket No. 51,630.) Decided May 8, 1968.

4 Mich App 547, reversed.

William Winegar was convicted, on his plea of guilty, of assault with intent to murder. Defendant moved to vacate plea and for new trial. Motion denied. Conviction reversed by Court of Appeals. The people appeal. Reversed, and conviction affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald L. Reisig,* Prosecuting Attorney, and *James R. Ramsey,* Assistant Prosecuting Attorney, for the people.

*William L. Mackay,* for defendant.

*Amicus Curiae:* American Civil Liberties Union of Michigan, by *Erwin Ellmann,* General Counsel, *Norton J. Cohen,* Legal Director, and *Edward Wise,* of counsel, for affirmance.

BRENNAN, J. Defendant, William Winegar, is in prison serving a life sentence. He was convicted upon his plea of guilty on November 17, 1961, to a charge of assault with intent to commit murder, in violation of PA 1931, No 328, § 83 (CL 1948, § 750.83 [Stat Ann 1962 Rev § 28.278]).

On January 29, 1965, William Winegar, through his attorney, filed a motion to withdraw his plea of guilty. On March 26, 1965, the trial court rendered an opinion denying the motion to withdraw the plea. An amended motion was filed April 6, 1965, and an order denying the motion and the amended motion was entered April 26, 1965. An appeal was taken to the Court of Appeals, which reversed the trial court and the matter is here on leave granted, 378 Mich 745 (4 Mich App 547).

This appeal represents a broadside attack on Winegar's conviction. It raises a number of questions, some of which are important to the administration of criminal justice in this State.

The facts necessary to decision of each issue are recited in connection with our discussion of each issue.

I

WHETHER DEFENDANT WAIVED HIS CONSTITUTIONAL RIGHT TO THE ASSISTANCE OF COUNSEL?

The record of Winegar's appearances before Ingham county Circuit Judge Marvin J. Salmon is quoted in full:

"ARRAIGNMENT—November 3, 1961

"*Mr. Dethmers:* Let the record show that this is the arraignment of William Winegar, alias William Winegarden.

"*The Court:* Mr. Winegar.

"*Mr. Dethmers:* Are you Mr. William Winegar?

"*The Defendant:* Yes.

"*Mr. Dethmers:* Otherwise known as William Winegarden?

"*The Defendant:* That is, the first time I ever saw that was in the newspaper.

"*Mr. Dethmers:* I see. (Read the information, charging a violation of Sec 83, Act No 328, et cetera).

"*The Court:* Do you understand the charge, Mr. Winegar?

"*Defendant:* Yes, sir, I do.

"*The Court:* The court wishes to advise you that you are entitled to be represented by a lawyer and if you are not financially able to employ one and will so advise the court, the court will see that you have a lawyer. Do you understand that?

"*Defendant:* Yes, sir. But they have impounded all my money.

"*The Court:* Well, you understand what I just said to you?

"*Defendant:* Yes.

"*The Court:* The court also wishes to inform you that you are entitled to have a trial either before a jury or before the court without a jury. Do you also understand that?

"*Defendant:* Yes.

"*The Court:* How do you wish to plead, guilty or not guilty?

"*Defendant:* I have no contest of it. I don't wish to contest it at all.

"*The Court:* How do you wish to plead, guilty or not guilty?

"*Defendant:* I am stuck in Ohio, too.

"*The Court:* Will you just answer my question, please. Do you wish to plead guilty or not guilty?

"*Defendant:* I plead guilty I guess, I don't know.

"*The Court:* You mean you don't know. What is it you don't know?

"*Defendant:* I don't understand the laws at all in this State, your Honor. I mean in Ohio where I come from they are entirely different.

"*The Court:* Well, you have had this charge read to you and you are entitled to plead guilty or not guilty or you may stand mute. Now whatever you wish to do is up to you.

"*The Defendant:* Well, I prefer to stand mute then.

"*The Court:* Very well, then a plea of not guilty will be entered by the court and you are remanded to the custody of the county sheriff to await trial.

"All right."

Two weeks later, the defendant was again brought before the circuit judge, and the following transpired:

"Arraignment Proceedings on November 17, 1961.

"*The Court:* Wine-e-gar. Mr. Winegar, you were before the court on the 3d day of November, 1961. The court then advised you of your rights, at which time you said you preferred to stand mute and the court entered a plea of not guilty for you. Now it is your desire, as I understand, to plead guilty, is that correct?

"*The Defendant:* Yes, your Honor.

"*The Court:* And that is what you are doing now, is pleading guilty to this offense?

"*Defendant:* Yes.

"*The Court:* Has anyone made you any promise of any kind to induce you to plead guilty?

"*Defendant:* No.

"*The Court:* Has anyone stated to you that if you would plead guilty he would secure leniency from the court?

"*Defendant:* No.

"*The Court:* Then you are pleading guilty because you actually are guilty?

"*Defendant:* Yes.

"*The Court:* Very well, I will talk with him. (*Conference in chambers.*)

"*The Court:* Let the record show that the court has conferred with Mr. Winegar relative to the circumstances of the crime, is convinced that he committed the crime, that his plea was freely, understandingly, and voluntarily made without undue influence, compulsion, or duress, and without promise of leniency. Therefore, his plea is accepted and he is remanded to the custody of the county sheriff to await sentence. That is all."

On the 4th of January, 1962, defendant appeared in court for sentencing. The record shows that this is what transpired:

"*The Court:* Are you Mr. Winegar?

"*The Defendant:* Yes, sir.

"*The Court:* You are here for sentence this morning, Mr. Winegar. Is there anything you have to say why sentence should not be pronounced against you?

"*The Defendant:* No, sir.

"*The Court:* It is the sentence of this court that you be confined to the State's Prison of Southern Michigan at Jackson, Michigan for life.

"And I think you know why the court is doing it. I don't think I need to explain to you. That is all."

In reversing Winegar's conviction, the Court of Appeals said:

"The record shows that the defendant was informed of his right to have counsel appointed if he was financially unable to employ counsel, but it further shows that the trial court failed to give the defendant an opportunity to so request." *People* v. *Winegar, supra,* pp 551, 552.

We disagree.

Defendant had many opportunities during his first arraignment to ask for the appointment of counsel. He then had two full weeks in which to make the request before being brought back to court. He had still another opportunity to request counsel before changing his plea.

*People v. Hobdy* (1968), 380 Mich 686, is controlling. A trial judge fulfills his obligation by giving the advice required by GCR 1963, 785.3, as this trial judge did. See, also, *People v. Dunn* (1968), 380 Mich 693.

## II

Is a Plea of Guilty Invalid Where the Record Does Not Include a Verbatim Transcript of the Colloquy between Court and Defendant in which the Provisions of GCR 1963, 785.3(2) Are Complied With?

The portion of the record which bears on this issue is repeated here:

"*The Court:* Wine-e-gar. Mr. Winegar, you were before the court on the 3d day of November, 1961. The court then advised you of your rights, at which time you said you preferred to stand mute and the court entered a plea of not guilty for you. Now it is your desire, as I understand, to plead guilty, is that correct?

"*Defendant:* Yes, your Honor.

"*The Court:* And that is what you are doing now, is pleading guilty to this offense?

"*Defendant:* Yes.

"*The Court:* Has anyone made you any promise of any kind to induce you to plead guilty?

"*Defendant:* No.

"*The Court:* Has anyone stated to you that if you would plead guilty he would secure leniency from the court?

"*Defendant:* No.

"*The Court:* Then are you pleading guilty because you actually are guilty?

"*Defendant:* Yes.

"*The Court:* Very well, I will talk with him. (*Conference in chambers.*)

"*The Court:* Let the record show that the court has conferred with Mr. Winegar relative to the circumstances of the crime, is convinced that he committed the crime, that his plea was freely, understandingly and voluntarily made without undue influence, compulsion, or duress, and without promise of leniency. Therefore, his plea is accepted and he is remanded to the custody of the county sheriff to await sentence. That is all."

Mr. Winegar was sentenced January 4, 1962, the proceedings on sentence being as follows:

"*The Court:* Are you Mr. Winegar?

"*The Defendant:* Yes, sir.

"*The Court:* You are here for sentence this morning, Mr. Winegar. Is there anything you have to say why sentence should not be pronounced against you?

"*The Defendant:* No, sir.

"*The Court:* It is the sentence of this court that you be confined to the State's Prison of Southern Michigan at Jackson, Michigan for life.

"And I think you know why the court is doing it. I don't think I need to explain to you. That is all."

Court Rule No 35A (1945)* provided as follows:

"Sec. 2. Imposing Sentence. If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty and imposing sentence shall ascertain that

---

* 318 Mich xxxix.—REPORTER.

the plea was freely, understandingly and voluntarily made, without undue influence, compulsion or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted.

"Sec. 3. Record. The trial court shall cause a stenographic record to be made and promptly transcribed of the proceedings had under sections 1 and 2 above, and shall certify over his signature thereto that the same is a true record of the proceedings had. Thereupon the record so made shall be filed with the clerk of the court and become and be kept as a part of the record in the case. In any subsequent proceedings such record shall be competent evidence of the facts and circumstances therein recorded."

Court Rule No 35A, § 2 (1945) was promulgated in furtherance of CL 1948, § 768.35 (Stat Ann 1954 Rev § 28.1058), which provides:

"Sec. 35. Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed."

Winegar himself does not claim, nor has he ever claimed, that he did not understand the nature of the accusation and the consequence of his plea. He is no stranger to criminal proceedings.[1] He claims that

---

[1] Appended to the reply to a previous application here, No 50,981-1/2, is defendant's criminal record:

the trial court did not comply with the rule because no verbatim record of the conference in chambers was made. If the trial judge did inform the defendant of the nature of the accusation and the consequence of his plea, there is no verbatim transcript of it.

On this subject, the Court of Appeals wrote:

"If the arraignment proceedings which culminate in a plea of guilty fail to comply with the appropriate rule, there is no standard by which they could be said to be valid." (p 552.)

and later:

"Reversal of the lower court for noncompliance with Court Rule No 35A (1945), or GCR 1963, 785.3 is the only method an appellate court has of enforcing the Court rule." (p 553.)

and finally:

"The plea of guilty in this case should not be allowed to stand because the record does not show substantial compliance with former Court Rule No 35A, § 2 (1945), now GCR 1963, 785.3(2)." (p 553.)

These three conclusions are wrong. First of all, a conviction based upon a plea of guilty is a judgment of the trial court. If the court has jurisdiction to enter the conviction, it is presumptively valid.

---

A. Convicted of burglary in 1943 and sentenced to prison for term of 1 to 15 years; paroled March 15, 1946; violated terms of parole and returned to prison June 6, 1946; paroled again October 15, 1946; violated terms of parole and returned to prison February 18, 1947; restored to parole and released December 10, 1947.

B. Convicted of burglary of an inhabited building in the nighttime in 1946 and sentenced to prison for term of 5 to 30 years; paroled January 23, 1952; released February 1, 1953.

C. Convicted of auto theft and arson in 1955 and sentenced to prison for term of 3 to 40 years; paroled March 26, 1959; discharged March 1, 1960.

D. Convicted of assault with intent to murder in 1961 and sentenced to life imprisonment.

E. Convicted of kidnapping a police officer in 1962 and sentenced to prison for term of 20 to 30 years.

Court Rule No 35A, § 3 (1945), provided:

"This rule is mandatory but failure to comply therewith shall not be considered jurisdictional."

GCR 1963, 529.1 provides:

".1 Harmless Error. No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding shall construe these rules to secure the just, speedy, and inexpensive determination of every action so as to avoid the consequence of any error or defect in the proceeding which does not affect the substantial rights of the parties."

CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096), provides:

"Sec. 26. No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

The entire thrust of our statutes and our court rule is to deny to a convicted felon the benefit of judicial oversights or miscues which do not go to the merits of his conviction. In the instant case, defendant filed a motion to withdraw his plea. Such a motion addresses itself to the discretion of the

court.  *People* v. *Vasquez* (1942), 303 Mich 340.
When made after conviction and sentence, as here,
such a motion must be based upon a showing of mis-
carriage of justice.  *People* v. *Collins* (1968), 380
Mich 131.

In that regard, the only thing that appears in the
record of this cause is the simple conclusionary state-
ment in the defendant's affidavit, "That I am inno-
cent of the charge lodged against me as I understand
the law of the State of Michigan."  Such a statement
does not constitute a showing of miscarriage of jus-
tice.

Second, reversal of a lower court is not the only
method an appellate court has of enforcing the court
rule.  The superintending authority of the Supreme
Court is sufficient to assure compliance by the trial
courts with a mandatory but nonjurisdictional court
rule.  There is no need to release or re-try crimi-
nals in order to enforce the court rule.

Third, a plea of guilty should not be set aside after
sentence merely because the verbatim record does
not affirmatively show compliance *in illis verbis* with
GCR 1963, 785.3(2).

In *Henning* v. *People* (1879), 40 Mich 733, it was
claimed that the court made no investigation of the
plea as required by the predecessor of present CL
1948, § 768.35.  The record being silent, the Court
caused certiorari to issue directing the trial court
to make return showing the manner in which the
investigation was carried out.

The trial judge made a return relating that he had
never spoken to the defendant, but had conferred
with defense counsel and with defendant's brother,
and had satisfied himself that the plea should be re-
ceived, and was voluntary and not the result of un-
due influence.  The investigation was held sufficient
and the conviction affirmed.

In *Edwards* v. *People* (1878), 39 Mich 760, it was held that the record affirmatively showed that the plea investigation was not carried out and the conviction was reversed. There, it was said (p 763):

"Without deciding that the absence from the record of a recital of such investigation must in all cases avoid the validity of a sentence on such plea, we have no hesitation in saying that the record ought to show the fact, and unless it does so, must show at least a reasonable delay between plea and sentence which may justify some presumption that this duty has been performed.

"The present record is, if not absolutely conclusive that no such steps were taken, at least strongly indicative of that fact."

In this case of Winegar, the record not only shows from the defendant's own words that the plea was not induced by any promise or expectation of leniency, it affirmatively shows that there was a conference in chambers, and there was a detailed "recital of such investigation" on the record.

The examination of the defendant in chambers was approved in *Edwards,* the Court saying at page 763:

"This statute not only requires the judge to examine carefully into the facts of the case, which can require no less than a search into the depositions if they have been returned or similar evidence if they have not been taken, but also compels him to examine the prisoner himself concerning the circumstances which induced him to plead guilty. It is evident that for this purpose it would be highly improper to take anything on the statement of the prosecuting attorney, or to allow him to be present at the examination of the prisoner, who in this respect stands in a position analogous to that of a married woman under the laws providing for her separate examination. It could not have been con-

templated that this should be done during the routine business of court and in presence of all the officers of justice and the prosecutor."

In this case, the court concluded, and stated on the record, that he found the plea to be freely, understandingly and voluntarily made. This meets the test of a constitutionally valid plea. The court could not have concluded that the plea was understandingly made without satisfying himself that the defendant understood the nature of the accusation and the consequence of his plea. We will not presume judicial incompetence or negligence.

"The oath of public officials as to the performance of their sworn duties is, it has been our experience, so consistently in accord with the fact of such performance that only in the most unusual circumstances would we be persuaded otherwise." *In re Valle* (1961), 364 Mich 471, 478.

A convicted defendant no longer enjoys the presumption of innocence. *People* v. *Fritch* (1910), 161 Mich 111; 1 Wharton, Criminal Evidence (12th ed), § 93, p 189; 29 Am Jur 2d, Evidence, § 225, page 276. He has the burden of showing something more than technical noncompliance with a rule. Absent a showing of violation or denial of constitutional rights, he has the obligation of alleging in a motion to withdraw plea such facts as would, if true, substantiate a finding that there was noncompliance which resulted in a miscarriage of justice.

It is in this light that we must view the affidavit of William Winegar attached to the motion to withdraw his plea. The affidavit is quoted in the margin.[2]

---

2 "William Winegar, being first duly sworn, deposes and says:
"1. That his plea of guilty in the above-entitled cause was not freely and understandingly made, without undue influence, compulsion or duress, or without promise of leniency for the following reasons:

It does not state facts which, if true, would substantiate his claim that the plea was not freely and voluntarily and understandingly made.

"A. That at the time that he pleaded guilty, he was not represented by an attorney and that his plea of guilty was made under mental and psychological compulsion because he and his codefendant, were constantly reminded by the sheriff's department or its agents, that the prisoner, Mauch, was in dire need of medical treatment because he had a bullet lodged against the nerve of his spinal column and he was not given adequate medical assistance in the jails that he was in, and, that the best thing for them to do would be to hurry up and get this matter through the courts so that they could go to a nice hospital which was located at Jackson prison.

"B. That the respondent was constantly reminded that if his codefendant died, he would in all probability, be charged with murder, however, if his codefendant was in Jackson prison in a hospital, he would probably be all right. That he was constantly harassed by police officers or members of the sheriff's department because they refused to release his wife's illegally seized property and personal items and that he was fearful for his wife's physical and mental health and that of his child.

"C. That the defendant's wife was harassed to the point of being driven to a hospital with a threatened miscarriage and nervous breakdown and because of the conduct of the police agencies and finally she was required to leave the State of Michigan. The fact that the police officers refused proper medical attention to this close friend and the psychological warfare conducted by the sheriff's department and actual physical torture of a close friend, influenced him to enter a plea of guilty which was not freely, understandingly and voluntarily made under all of the circumstances because it was induced by fear, misapprehension, threats, express and implied, of receiving a more severe sentence or a greater charge being lodged against him if his codefendant died.

"D. That the sheriff's department or police agencies continually harassed his wife by refusing to return to her personal possessions or money to her, which left her with a small child, while she was pregnant, with no means of support or even money to buy milk; the illegal padlocking of her home when she was out of the State and by constant entry of the home illegally by the police and sheriff's department. This occurred without benefit of a warrant and while they had no right to be in his home or his wife's home. In addition, the defendant's private possessions and property disappeared as a result of the conduct of the police agencies, all while he was required to post an excessive bond of $200,000, which prevented him from seeking aid on his own or through his attorney in Ohio. The people claim that he was brought to a pretrial conference, but the respondent avers that he was asked, 'Well, what are you going to do?', short of jumping up and running out of the door, what could he do? He was given no aid or suggestion or advise (sic) of any kind by anyone, no less by an attorney.

"That I am innocent of the charge lodged against me as I understand the law of the State of Michigan."

The Court of Appeals is reversed and the conviction is affirmed. No costs.

KELLY, BLACK, and O'HARA, JJ., concurred with BRENNAN, J.

ADAMS, J. (*dissenting*). The record of the arraignment of the defendant in this case on November 3, 1961, presents a picture of a defendant in a state of mental confusion. The exchange with regard to the right to counsel was as follows:

"*The Court:* The Court wishes to advise you that you are entitled to be represented by a lawyer and if you are not financially able to employ one and will so advise the court, the court will see that you have a lawyer. Do you understand that?

"*Defendant:* Yes, sir. But they have impounded all my money.

"*The Court:* Well, you understand what I just said to you?

"*Defendant:* Yes."

Defendant's response revealed a lack of comprehension of what the judge was attempting to explain to him. It seems obvious that he could not have understood his right to counsel meant counsel for which he would not have to pay. Instead of demanding of defendant if he understood, the judge should have restated the right to be certain that defendant did understand and should have framed his further questions in such a way as to obtain a clear waiver of the right if such was defendant's wish.

Even if the judge thought he had sufficiently explained defendant's right to counsel, his further questions and defendant's answers clearly show he had not done so:

"*The Court:* How do you wish to plead, guilty or not guilty?

"*Defendant:* I am stuck in Ohio, too.

"*The Court:* Will you just answer my question, please. Do you wish to plead guilty or not guilty?

"*Defendant:* I plead guilty I guess, I don't know.

"*The Court:* You mean you don't know. What is it you don't know?

"*Defendant:* I don't understand the laws at all in this State, your Honor. I mean in Ohio where I come from they are entirely different."

Since I cannot read from this record a knowing and intelligent waiver of the right to counsel, I would affirm the Court of Appeals and grant a new trial.

SOURIS, J., concurred with ADAMS, J.

T. M. KAVANAGH, J., concurred in the result.

DETHMERS, C. J., did not sit.