## PEOPLE *v.* DUFFIELD

1. HOMICIDE—JURISDICTION—STATUTES.

    By statute, jurisdiction of homicide prosecution lies in either the county of the mortal blow or the county of death (MCLA § 762.5).

2. HOMICIDE—JURISDICTION—COMMON LAW.

    At common law, jurisdiction of a homicide prosecution was given to the county of the mortal blow, if death of the victim ensued in another county.

3. HOMICIDE—JURISDICTION—STATUTE.

    By statute, jurisdiction of a homicide prosecution lies in Michigan where mortal blow is inflicted abroad, at sea, or in another state, and death occurs in Michigan (MCLA · § 762.6).

4. HOMICIDE—JURISDICTION—DEATH OUTSIDE STATE—STATUTES.

    Statute conferring jurisdiction of homicide prosecution on court of either county where mortal blow is inflicted in one county but death ensues in another *held* to confer jurisdiction on court of county in Michigan where blow was struck in case where the victim died outside the state (MCLA § 762.5).

------------

REFERENCES FOR POINTS IN HEADNOTES

[1-4]  40 Am Jur 2d, Homicide § 197 *et seq.*
[5, 7, 10]  21 Am Jur 2d, Criminal Law § 503.
[6, 12]  21 Am Jur 2d, Criminal Law § 486 *et seq.*
[8]  5 Am Jur 2d, Appeal and Error §§ 778, 779.
[9]  29 Am Jur 2d, Evidence § 225.
[11]  40 Am Jur 2d, Homicide § 127.

5. Criminal Law—Plea of Guilty—Withdrawal.
   There is no absolute right to withdrawal of a plea of guilty.

6. Criminal Law—Plea of Guilty—Examination by Court—Obligation of Prosecution.
   The prosecution is under no obligation to prove anything during an examination by the court of one seeking to plead guilty.

7. Criminal Law—Plea of Guilty—Withdrawal—Discretion.
   A motion to withdraw a plea of guilty of crime after conviction and sentence is addressed to the discretion of the court.

8. Criminal Law—Appeal and Error—New Trial—Reversal—Miscarriage of Justice.
   Any procedural error in a criminal case which does not result in a miscarriage of justice is not ground for a new trial or reversal of conviction.

9. Criminal Law—Presumptions—Innocence—Conviction.
   A defendant convicted of a crime no longer enjoys the presumption of innocence.

10. Criminal Law—Plea of Guilty—Withdrawal.
    A defendant must show sufficient evidence to sustain a finding that there was noncompliance with the rule pertaining to the acceptance of a plea of guilty which resulted in a miscarriage of justice, in order to withdraw a plea of guilty (MCLA § 768.35; GCR 1963, 785.3[2]).

11. Homicide — Manslaughter — Defenses — Voluntary Intoxication.
    A defense of voluntary intoxication is not available to a charge of a crime which requires no specific intent, like manslaughter.

12. Criminal Law—Manslaughter—Plea of Guilty.
    A defendant understood the events surrounding a victim's death well enough to enter a plea of guilty of manslaughter intelligently where he admitted fighting with the victim and hitting him with his fists.

Appeal from Cass, David Anderson, Jr., J. Submitted Division 3 November 6, 1969, at Grand Rapids. (Docket No. 6,562.) Decided December 4, 1969. Application for leave to appeal filed January 7, 1970.

Ronald Duffield was convicted of manslaughter on his plea of guilty. Defendant appeals. Affirmed.

*Robert R. Waterson,* for defendant.

Before: FITZGERALD, P. J., and R. B. BURNS and BRONSON, JJ.

FITZGERALD, P. J. Ronald Duffield was convicted, on his plea of guilty, of manslaughter on May 25, 1967, in Cass County circuit court and sentenced to 8 to 15 years in prison. He requested appellate counsel about a year later, counsel was appointed, and a motion to withdraw his plea was filed. On September 12, 1968, the motion was denied and claim of appeal filed seeking review of the conviction and the order denying the motion.

It appears that Duffield and the victim were drinking heavily, that they quarreled over a petty debt, and it was charged that Duffield, a much larger man, beat the victim insensible and left him on the floor of his home in Cass County. Later the victim was taken to a hospital in Indiana where he died.

Defendant first argues that jurisdiction was lacking. He points out that death is an essential element of manslaughter, and that *Chapman* v. *People* (1878), 39 Mich 357, 360, said:

> "Until provided for by statute, death in one county from an attack in another *did not make murder in either county."* (Emphasis supplied.)

This, says defendant, is the common law of Michigan. He then states the doctrine of constructive presence from 22 CJS, Criminal Law, § 136(n), p 363, and a statement from Clark & Marshall, A Treatise on the Law of Crimes (6th ed), p 150. Finally, *United States* v. *Palmer* (1818), 16 US (3

Wheat) 610 (4 L Ed 471); *People* v. *Tyler* (1859), 7 Mich 161, and *Tyler* v. *People* (1860), 8 Mich 320, are cited.

To analyze defendant's contention that this is the common law, we must look to see if change has been made by statute. MCLA § 762.5 (Stat Ann 1954 Rev § 28.848), states that:

"If any mortal wound shall be given or other violence or injury shall be inflicted, or any poison shall be administered in 1 county by means whereof death shall ensue in another county, the offense may be prosecuted and punished in either county."

The trial court held that the fact the county of death is outside of the state, and prosecution in the county of death impossible, does not relieve defendant of liability to prosecution in the county where the injury was inflicted.

Since the wording of the Michigan statute is not specifically addressed to this precise issue, a question of construction arises. Moreover, there is a dispute as to the common law on this issue.

Defendant misconstrues the common-law rule. The ancient common law is explored at length by Justice CAMPBELL in *Tyler* v. *People, supra,* and he points out that, "the rule survived its reason."

"But, formerly, if a fatal blow was given in one county, and death happened in another, the homicide could not be within the knowledge of the jurors of either county; those who could speak as to the blow having no means of ascertaining the death, and *vice versa.* But it was settled that, by carrying the dead body into the county where the wound was given, so that death could be shown by view, the offense might be tried there.    *    *    *    [*A*]*t common law (but probably when jury trials became more improved) a trial might always be had in the county where the mortal blow was given, 'for that alone is*

*the act of the party, and the death is but a conse-*
*quence.'*  \*  \*  \*  The statute of 2 & 3 Edw VI,
c 24, provided that, in case of a mortal injury in
one county, followed by death in another, an indict-
ment found in the county where death happened
should be as good and effectual in law as if the
stroke or poisoning had been committed and done
in the same county where the party shall die!"
(Emphasis supplied.)  *Tyler* v. *People, supra,* 339,
340.

This is the English rule: jurisdiction lies in either
the county of the blow or the county of death. This
precise rule is enacted in MCLA § 762.5 (Stat Ann
1954 Rev § 28.848). As to cases like the instant
one, the common law gives jurisdiction to the county
of the blow. MCLA § 762.6 (Stat Ann 1954 Rev
§ 28.849) provides that where the blow is inflicted
abroad, at sea, or in another state, and death occurs
in Michigan, jurisdiction lies here.

"If a wound is inflicted outside the forum state,
but the victim later dies in the state, it is considered
to be murder or manslaughter in the state in which
the death occurs, *as well as in the state or country
in which the wound was given.* [Citing *People* v.
*Tyler, supra.*] This approach purports to be a re-
definition of homicide law, but its primary effect is
to create jurisdiction where none would otherwise
lie *under the common law concept that the place of
homicide is where the blow was given."* George,
Extraterritorial Application of Penal Legislation,
64 Mich L Rev 609, 622 (1966).

"According to the weight of authority it is the
rule of the common law as adopted in this country
that the courts of the state where the mortal wound
was inflicted have jurisdiction of the offense, though
the deceased died in another state; and in some juris-
dictions this rule is expressly sanctioned by statute."
3 Warren, Homicide, § 298, p 475.

See also, *Simms* v. *United States* (1957), 101 App DC 304 (248 F2d 626); *State* v. *Carrier* (1956), 235 Ind 456 (134 NE2d 688); *Kelley* v. *State* (1943), 181 Md 642 (31 A2d 614); *Simpson* v. *State* (1893), 92 Ga 41 (17 SE 984); *State* v. *Justus* (1959), 65 NM 195 (334 P2d 1104); and 22 CJS, Criminal Law, § 185(17), p 478.

Cass County had jurisdiction to try this case.

Defendant further asks that he be allowed to withdraw his plea of guilty for the reason that he had no personal knowledge of the actions alleged and, therefore, *prima facie,* he could not truthfully enter a guilty plea.

At the arraignment on May 25, 1967, the defendant pled guilty, but upon being questioned, he indicated his lack of personal knowledge as to any elements of the crime alleged due to the fact that he had been drinking.

Defendant contends that his statements at the arraignment were based only on what he had heard at the preliminary examination, and that, therefore, he had no independent knowledge of any actions which were alleged to have taken place. Nor did he have any independent knowledge of the resulting death of the deceased. Therefore, he did not have the ability to enter a valid guilty plea and it should be allowed to be withdrawn. GCR 1963, 785.3(2), MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058).

By its court rules, Michigan has provided the following:

"Imposing Sentence. If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty

and imposing sentence shall ascertain that the plea was freely, understandingly, and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted." GCR 1963, 785.3(2).

Similar requirements are put forth in the following statute:

"Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed." MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058).

There is, of course, no absolute right to withdrawal of a guilty plea. *People* v. *Zaleski* (1965), 375 Mich 71. The prosecution is under no obligation to prove anything during the examination by the court of one seeking to plead guilty. *People* v. *Paul* (1968), 13 Mich App 175. A motion to withdraw a plea of guilty to a crime after conviction and sentence is addressed to the discretion of the court. *People* v. *Winegar* (1968), 380 Mich 719. Any procedural error in a criminal case which does not result in a miscarriage of justice is not ground for a new trial or reversal of conviction. *People* v. *Winegar, supra.* A defendant convicted of a crime no longer enjoys the presumption of innocence and

he has the burden of showing something more than technical noncompliance with the rule pertaining to the acceptance of a plea of guilty, and in order to withdraw a plea of guilty, the defendant must show sufficient evidence to sustain a finding that there was noncompliance which resulted in a miscarriage of justice. *People* v. *Winegar, supra.*

The trial court concluded that in this particular case, defendant indicated during the entering of his guilty plea that there were some things he did not recall and there were some things which he indicated that he knew only by what he had heard. The trial court stated:

"But there were other things, and they were important things, such as inflicting the injury with his fists, that he was in a fight with this man, that he was there at the place, and things of this kind, and many of which came right after saying, 'Well, I don't remember about that, but I do remember about this', so I can't see where there was any confusion in his mind whatsoever."

"And from the examination, the court satisfied itself that he had in fact engaged in a fight with John Henry Frazier, and that as a result of this fight, John Henry Frazier had come to his death."

It is clear that the defense of voluntary intoxication is not available in a non-specific-intent crime like manslaughter.

The real question is whether the defendant understood the events surrounding the death of the victim well enough to intelligently enter a plea of guilty. Although the court at the arraignment asked defendant leading questions, nevertheless the defendant, represented by counsel, admitted that he got into a fight with the victim, that he hit the victim with his fist or something of this kind, that

he remembers he had the victim down on the floor and was hitting him with his fists.

The trial judge did not abuse his discretion in accepting the plea and there was no miscarriage of justice.

Affirmed.

All concurred.