PEOPLE v. LEWIS

Opinion of the Court

1. Criminal Law—Plea of Guilty.

Appellate courts should be concerned with substance, not with form, in determining if a plea of guilty should be set aside, and the fundamental inquiry is whether there has been a miscarriage of justice (GCR 1963, 529.1; CL 1948, § 769.26).

Concurrence by Weipert, J.

2. Criminal Law—Plea of Guilty—Voluntariness—Appeal and Error—Direct Appeal—Discretion.

*Direct appeal from a conviction based on a guilty plea, presenting solely the question whether upon the record the trial judge abused his discretion in accepting the plea, is not the correct way to challenge either the ultimate truth or the voluntariness of the plea.*

3. Criminal Law—Plea of Guilty—Voluntariness—Inquiry—Quasi-Administrative Function.

*The inquiry into and examination of the voluntariness of a plea of guilty required by statute and court rule is a quasi-administrative function designed to protect unknowing defendants from their mistakes (MCLA § 768.35; GCR 1963, 785.3[2]).*

4. Attorney and Client—Plea of Guilty.

*A responsible Bar or the Judicial Tenure Commission should initiate grievance investigation of the responsible parties where either lawyer or judge fails so utterly that a plea of guilty must be set aside for rudimentary errors in its taking, and the plea-tendering defendant is found to be indeed unadvised.*

---

References for Points in Headnotes

[1, 2] 5 Am Jur 2d, Criminal Law § 867.
[3, 5, 6] 21 Am Jur 2d, Criminal Law § 486 et seq.
[4] 7 Am Jur 2d, Attorney at Law § 33.

5. CRIMINAL LAW—PLEA OF GUILTY—NEW TRIAL.

> *Setting aside pleas of guilty where no credible proof is presented and adjudication made that the plea was untrue, coerced or fraudulently induced, or tendered out of ignorance of the defendant's rights, not only defeats the prompt deterrence of the criminal law but wastes public resources in duplicated hearings and new trials when the evidence is stale.*

6. CRIMINAL LAW—PLEA OF GUILTY—ATTORNEY AND CLIENT.

> *Trial court is entitled to assume that counsel has fully advised defendant of his rights where a defendant represented by counsel, court-appointed or self-engaged, tenders a plea of guilty; nonetheless, the trial court is obliged to elicit, in a dialogue between judge and defendant on the record, the minimum data specified in a court rule and should the defendant say anything casting doubt on whether counsel had indeed performed his duty or suggesting to an ordinarily perceptive judge that he is confused or laboring under some misapprehension, then the court must inquire further and unless the matter is readily clarified by additional inquiry, the court should decline to accept the plea of guilty at that time (GCR 1963, 785.3[2]).*

Appeal from Recorder's Court of Detroit, Gerald W. Groat, J. Submitted Division 1 April 8, 1970, at Detroit. (Docket No. 5396.) Decided December 9, 1970.

Joseph Lewis was convicted, on his plea of guilty, of assault with intent to rob being armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*Blinstrub, O'Neill & Shannon,* for defendant on appeal.

Before: J. H. Gillis, P. J., and V. J. Brennan and Weipert,* JJ.

J. H. Gillis, P. J. Defendant Joseph Lewis pled guilty to assault with intent to rob while being armed. MCLA § 750.89 (Stat Ann 1962 Rev § 28-.284). Defendant brings this appeal as of right, arguing that the plea of guilty was not properly taken, by the trial court and should be set aside.

The pertinent portions of the transcript are set forth in the concurring opinion. This case is controlled by *People* v. *Hobdy* (1968), 380 Mich 686; *People* v. *Dunn* (1968), 380 Mich 693; *People* v. *Stearns* (1968), 380 Mich 704; and *People* v. *Winegar* (1968), 380 Mich 719. As the Court noted in *Dunn, supra,* p 701:

"In conclusion, we cite again the court rule and statute cited in *People* v. *Winegar* (1968), 380 Mich 719; GCR 1963, 529.1, and CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096). The import of both the rule and the statute is that on review courts should be concerned with substance, not with form, that the fundamental inquiry is whether there has been a miscarriage of justice".

This record does not disclose a miscarriage of justice.

Affirmed.

V. J. Brennan, J., concurred.

Weipert, J. (*concurring*). Defendant was originally charged with robbery armed, pleading not guilty. However, on July 7, 1964, he appeared with counsel before the Recorder's Court of the City of Detroit and pleaded guilty to the included offense

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of assault with intent to rob being armed.  MCLA
§ 750.89 (Stat Ann 1962 Rev § 28.284).  He was
thereafter placed on three-year probation.  One is-
sue in this appeal (the requirement of counsel in
a later probation-violation hearing) is no longer
before us, the lower court having corrected it.

The court questioned the defendant on his plea
in the following manner, presenting the remaining
issue, whether the plea of guilty was properly taken:

*"The Court:* How old are you?
*"The defendant Lewis:* Seventeen.
*"The Court:* When is your birthday?
*"The defendant Lewis:* October 19.
*"The Court:* Your attorney, Mr. Stanner, has
advised the court that you wish to withdraw your
former plea of not guilty to the charge of robbery
armed and to enter a plea of guilty to the included
offense of assault with intent to rob, being armed,
is that correct?
*"The defendant Lewis:* Yes, sir.
*"The Court:* Now did any one threaten you if
you did not plead guilty?
*"The defendant Lewis:* No, sir.

\*   \*   \*

*"The Court:* This plea of guilty to the crime of
assault with intent to rob, being armed, is your own
wish and will and free and voluntary on your part,
is that correct?
*"The defendant Lewis:* Yes, sir.
*"The Court:* Now is the plea of guilty to an
offense which occurred on the 23rd day of May,
1964, wherein you assaulted one Darrius Dudley,
is that right?
*"The defendant Lewis:* Yes, sir.
*"The Court:* Did you discuss this matter with
your attorney?  You heard him advise the court

that he has talked to you about your constitutional rights and did you fully understand him?

*"The defendant Lewis:* Yes, sir.

\* \* \*

*"The Court:* Do you fully understand your rights?

*"The defendant Lewis:* Yes, sir.

*"The Court:* In other words, you are pleading guilty to the offense of assault with intent to rob, being armed, because you are guilty?

*"The defendant Lewis:* Yes, sir".

The case before us is a direct appeal from a conviction based upon a plea of guilty, presenting solely the question whether upon the record the trial judge abused his discretion in accepting the plea. Such a direct appeal, as is pointed out in the opinion of Chief Justice Brennan in *People* v. *Taylor* (1970), 383 Mich 338, 359, 360, is hardly an appropriate vehicle by which to challenge either the ultimate truth or the voluntariness of the plea. The statute and the court rule (MCLA § 768.35; GCR 1963, 785.3[2]) providing for inquiry into the voluntariness of a guilty plea, apply rather to a quasi-administrative function of the trial court designed to protect unknowing defendants from their mistakes. Quite different although often related questions may be presented in motions for new trials—questions of the *factual* existence of fraud, duress, coercion, or lack of understanding inducing a guilty plea. No such questions are before us. The defendant was represented by counsel and although only 17 years old was himself no stranger to criminal proceedings, as appears from the probation violation hearing. Nor does he allege his innocence, or that substantial injustice had been done.

In reviewing cases of this nature, to determine the limited question whether the lower court properly accepted a plea of guilty, this Court can and does rely on the Bar of this state to make certain that a client is not a victim of circumstances, or taken advantage of by policing agencies, that a plea is not based on inadmissible confessions or other evidence, or on ignorance by the client of the nature of the crime charged against him, of the range of penalties or of his right to trial and the privilege against self-incrimination. It is the whole aim and purpose of the constitutional right to counsel to provide this assurance.

Shall the courts, that have given life and breath to constitutional guarantees, appointing counsel in indigent cases, and, increasingly, compensating counsel adequately out of the public funds, now declare that all this is empty formality, window-dressing, and that the defendant remains no better off before the bench than if he stood alone? Then the increase in public morality, the added insight into the nature of human beings and the workings of governmental structure, that in recent decades inspired the Supreme Court of the United States and the Supreme Court of this state to pioneering protection of civil rights, amount to little indeed. Then the right to counsel is no more than misleading *ignis fatuus*—for it would be based on what the appellate courts, by their rulings in guilty-plea appeals, confess to be a wholly false premise, namely, the premise that the profession of the law is a learned profession, not a mere trade, and that it is staffed by competent and honorable men and women.

The defendant's right to have an attorney in a criminal prosecution is more than the mere formality of according him companionship in court. That

would be better achieved by appointing his high school friend or next-door neighbor; they at least could be relied upon for empathy. It is the right to have the effective assistance of counsel.[1] To suppose that such counsel will meekly lead the defendant as a sheep to the slaughter, wholly failing in investigation and advice, allowing him to plead unwittingly or under misrepresentation, coercion or duress, is degrading to the profession. This Court will not insult its Bar. It knows full well that the Bar is to be trusted. If it is not, neither are the courts, recruited from the Bar. Shall judges be heard to say that they alone of all men follow their oaths? Then there is little hope for justice on this earth, and most of the growth of the law is hollow mockery. Where a country and its Bar are depraved, it has not been in the American experience to look to a tiny elite for salvation.

We should not on the other hand be thought so naive as to believe that lawyers and judges commit no errors, perform ever at optimum, are immune to human weaknesses. Where, however, either lawyer or judge fails so utterly that a plea must be set aside for rudimentary errors in its taking, and the plea-tendering defendant is found to be indeed unadvised, it is not too much to suggest that a responsible Bar or the Judicial Tenure Commission should initiate grievance investigation of the responsible parties. For in most such cases, either the defendant's lawyer has accepted public funds (or his client's) without services rendered, or the judge has abused judicial discretion. If such things occur, they can be remedied most effectively by tracing the evil to its source.

---

[1] On the right to the *effective assistance* of counsel see *People* v. *Degraffenreid* (1969), 19 Mich App 702, 709, 715.

Wastage of public funds is itself a type of ecological suicide.  This generation is rapidly learning the limitations of its resources for remedying ills accumulated through ages of narrow-sightedness. Funds wasted in duplicating the services of lawyers and judges, or paying for services unrendered, like wealth dissipated in mere Fourth-of-July scientific showmanship in the heavens, leaves the real problems concealed, untouched and deferred.

The setting aside of guilty pleas where no credible proof is presented and adjudication made that the plea was untrue, coerced or fraudulently induced, or tendered out of ignorance of the defendant's rights, not only defeats the prompt deterrence of the criminal law but wastes public resources in duplicated hearings and new trials when the evidence is stale.[2]  It can even, in grievous cases, give public scandal.  "Perhaps we have placed too much emphasis on trying to define the trial judge's role in the acceptance of a plea, and too little emphasis on defining the role of the appellate courts in the reviewing of convictions based upon pleas of guilty." *People* v. *Taylor, supra,* p 358.

Where a defendant represented by counsel, court-appointed or self-engaged, tenders a plea of guilty, the Court is entitled to assume that counsel has fully advised him of his rights.  The Court is obliged, nonetheless, to elicit in a dialogue between judge and defendant on the record, the minimum data specified in the Court Rule—the purpose of which is simply to afford a double-check, theoretically unnecessary, as to whether counsel had indeed per-

---

[2] The same might be true if plea-bargaining or charge-reduction practices were discountenanced although without judicial participation.  There, however, other policy considerations may be involved. See Judge LEVIN's opinion in *People* v. *Byrd* (1968), 12 Mich App 186, 194, and *People* v. *Earegood* (1968), 12 Mich App 256 (*rev'd,* in part in [1970], 383 Mich 82).

formed his duty. Should the defendant say anything casting doubt on the latter, or suggesting to an ordinarily perceptive judge that he is confused or laboring under some misapprehension, then the court must inquire further. Unless the matter is readily clarified by additional inquiry (as to which no "rules" can be established that would do more good than harm), the court should decline to accept the plea of guilty *at that time*. It may of course be tendered again later, after defendant and his lawyer have had adequate opportunity for further investigation and consultation.

In the case before us the inquiry of the trial judge, although minimal, complied with the foregoing. We are unable to find on the record before us an abuse of discretion in accepting the plea—clear showing of which we hold to be required where the court rule minimums are followed. Nor is there the slightest showing or claim of what would in effect be malpractice by counsel. If there were such a showing, a case would be presented similar to one in which a defendant pleads without benefit of counsel, where, of course, the duty of inquiry by the trial judge is much more extensive. In the latter case the checklist of inquiry suggested in *People* v. *Taylor* (1968), 9 Mich App 333 (overruled in cases where counsel appears in 383 Mich 338, decided April 1970) might well be employed.[3]

We find the plea of guilty validly taken. Affirmed.

---

[3] Justice ADAMS has suggested, in his dissenting opinion in *People* v. *Taylor* (1970), 383 Mich 338, 382, the use of a written questionnaire along the same lines, to be filled in by the defendant with advice of counsel after the judge has completed his interrogation but before acceptance of the guilty plea. Justice ADAMS also observes: "Until this Court elects to re-formulate detailed requirements for the taking of pleas, such as were set forth in repealed GCR 1963, 785.3(2), the procedure must largely be left up to the individual trial judge". Another expedient followed by many circuit judges, to make certain that a guilty plea has not been improperly taken, is provided by a thorough pre-sentence investigation and report. Use

of this valuable and already existing tool by the appellate courts would go far to reduce to the vanishing point the chance of a substantial miscarriage of justice. The pre-sentence report constitutes a third check, added to the double-checking of defendant's own counsel. It is prepared by professionally trained probation officers, a service-branch of the trial court itself, independent of the prosecuting and law enforcement authorities.