PEOPLE *v.* STEARNS.

Dissenting Opinion.

Adams, J.

1. Criminal Law—Plea of Guilty—New Trial.
   *New trial should be granted, following a plea of guilty, where there was not compliance with former court rule requiring that court inform defendant that in case he was financially unable to provide counsel the court upon request would appoint counsel, unless this right was clearly waived by the defendant (Court Rule No 35A [1945]).*

2. Same—Constitutional Rights—Procedure.
   *The basic constitutional rights of a defendant in a criminal trial must be the concern of the court and not whether a court rule has, or has not, been followed to the letter, the fundamental inquiry being whether in the proceedings there has been a miscarriage of justice.*

3. Same—Right to Assistance of Counsel.
   *Assistance of court-appointed counsel for an indigent defendant in a criminal trial is a fundamental right essential to a fair trial, and the denial of such assistance violates the Federal Constitution (US Const, Am 14).*

4. Same—Request for Assistance of Counsel.
   *The burden of requesting counsel is not cast upon an indigent defendant accused of crime but, rather, a burden is placed upon the people of tendering counsel.*

---

References for Points in Headnotes
[1] 21 Am Jur 2d, Criminal Law § 486.
[2] 21 Am Jur 2d, Criminal Law § 223.
[3–5] 21 Am Jur 2d, Criminal Law § 318 *et seq.*
[6] 21 Am Jur 2d, Criminal Law § 496.
[7–10] 21 Am Jur 2d, Criminal Law § 486 *et seq.*

5. Same—Right to Assistance of Counsel—Waiver.

*Determination by trial judge that defendant charged with breaking and entering in the nighttime had knowingly and intelligently waived right to assistance of counsel is supported by record where defendant, a young man shown to be intelligent, had previously had court experience, had twice been convicted of felonies, had at one time had assistance of court-appointed counsel, and upon his current arraignment had said that he did not want a lawyer to represent him (CL 1948, § 750.110).*

6. Same—Plea of Guilty—Breaking and Entering.

*Assertion of appellate counsel that he believes the alleged incident upon which information was based took place in the daytime rather than nighttime, being wholly unsupported, is insufficient to set aside plea of guilty to breaking and entering in the nighttime (CL 1948, § 750.110).*

7. Same—Breaking and Entering—Plea of Guilty.

*Plea of guilty should be set aside where trial judge, in accepting plea of guilty to breaking and entering in the nighttime and prior to sentencing, did not, in accordance with former court rule, inform the defendant of the nature of the accusation against him, and did not make an examination of the accused for the purpose of establishing the crime and the defendant's participation in it, in order to determine whether the plea was freely and understandingly made (CL 1948, § 750-.110; Court Rule No 35A [1945]).*

Opinion of the Court.

8. Criminal Law—Plea of Guilty—Breaking and Entering.

Motion for new trial following plea of guilty to breaking and entering in the nighttime was properly denied where information was read to defendant, who had previously pled guilty to such a charge, defendant was advised of his right to counsel and jury trial and stated he did not wish counsel or jury trial but desired to plead guilty, and the trial judge, prior to sentencing, called the defendant's attention to the fact that he was pleading guilty to a charge of breaking and entering in the nighttime for the second time and cautioned him of the danger of becoming an habitual criminal (CL 1948, § 750.110).

9. Same—Plea of Guilty—New Trial—Miscarriage of Justice.

Motion for new trial following a plea of guilty in criminal action is properly denied where the record does not disclose that there has been a miscarriage of justice,

10. CRIMINAL LAW—ACCEPTANCE OF PLEA OF GUILTY—VOLUNTARI-
      · NESS.

    *Conviction upon defendant's plea of guilty should be set aside
where (1) there was not compliance with former court rule
requiring accused to be advised of right to have court-ap-
pointed counsel and requiring that he be advised of the con-
sequences of his plea, and (2) there was a failure to examine
accused to determine that his plea was freely, understandingly,
and voluntarily made, also as required by the court rule
(Court Rule No 35A [1945]).*

Appeal from Grand Traverse; Brown (Charles
L.), J., following denial of petition for delayed ap-
peal by Court. of Appeals, Division 3; Fitzgerald,
P. J., and Burns and Holbrook, JJ. (Docket No.
1,912.) Submitted January 10, 1968. (Calendar
No. 7, Docket No. 51,516.) Decided May 8, 1968.

James Lee Stearns pleaded guilty to breaking
and entering in the nighttime. New trial denied.
Plaintiff granted delayed appeal by Supreme Court.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Stuart D. Hubbell,*
Prosecuting Attorney, and *Kenneth G. Mackness,*
Chief Assistant Prosecuting Attorney, for the
people.

*Philip A. Clancey,* for defendant.

ADAMS, J. (*dissenting*). Defendant James Lee
Stearns, aged 23, was charged with breaking and
entering in the nighttime.* It was alleged that
the offense occurred July 21, 1961. He was ar-

---

* CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305).—REPORTER.

raigned in municipal court on August 7, 1961, waived examination, and was bound over to circuit court. On August 16, 1961, he was arraigned in circuit court.

The following exchange took place upon arraignment:

"*The Court:* You understood you had a right to have examination?

"*Defendant:* Yes, sir.

"*The Court:* And a right to have your own lawyer with you?

"*Defendant:* Yes.

"*The Court:* Did you have a lawyer?

"*Defendant:* No, sir.

"*The Court:* You understand, should you be found guilty, this court would have a right to send you to jail, but doesn't have to?

"*Defendant:* Yes, sir.

"*The Court:* You understand, of course, you have a right to have a jury trial and a right to have a lawyer represent you in this court. Do you wish to have a jury trial?

"*Defendant:* No, sir.

"*The Court:* Do you want a lawyer to represent you?

"*Defendant:* No, sir.

"*The Court:* Have you figured out how you intend to plead to this charge?

"*Defendant:* Yes, sir. Guilty.

"*The Court:* On pleading guilty did anyone use any force, threats or influence of any kind against you in order to get you to say you are guilty?

"*Defendant:* No, sir.

"*The Court:* Have the officers used you all right?

"*Defendant:* Yes, sir.

"*The Court:* They didn't beat you up?

"*Defendant:* No.

"*The Court:* Did anybody make any promises to you in order to get you to plead guilty?

"*Defendant:* No, sir.

"*The Court:* You are pleading guilty because you are guilty and for no other reason?

"*Defendant:* Yes, sir.

"*The Court:* Very well. The court will accept your plea."

On September 6, 1961, an assistant prosecutor moved for sentence. The transcript shows:

"*The Court:* Can you give us any reason why, with your high intellect, your high I.Q., you continue to get yourself in all this trouble?

"*Defendant:* Well, sir, I guess everybody has an excuse or more or less something they fall back on, and about the only thing I could use, and I guess it is pretty well the truth, is my drinking problem has been pretty bad.

"*The Court:* Well, I think that is the truth; but you have difficulty in using the truth. In fact, you would tell a lie when the truth would be much better. You haven't lied to me here this morning, as yet. Here you are with an I.Q. of 126, far above average intelligence. If you would just get that mind of yours working in the right channel, in the right direction, you could really go places and make something of yourself; but here you are now with at least a third felony. Did I sentence you the first time?

"*Defendant:* No, sir. Judge Jacobs, from Centreville, Michigan.

"*The Court:* That was October 20, 1952.

"*Defendant:* Yes, sir.

"*The Court:* He gave you 2 to 15 years for breaking and entering in the nighttime.

"*Defendant:* Yes, sir.

"*The Court:* Then you were paroled, and violated your parole.

"*Defendant:* Yes, sir.

"*The Court:* And went back. How many times did you go back, before you finished that sentence?

"*Defendant:* Well, sir, I went back P.V., then I got a new sentence in 1954, from Petoskey.

*"The Court:* That was 2 to 14 years for forgery?

*"Defendant:* Yes. Then I went back as a parole violator in 1959 from here.

*"The Court:* Then you were paroled September 12, 1957, from here?

*"Defendant:* Yes, sir.

*"The Court:* And you violated that parole in 1959?

*"Defendant:* Yes, sir.

*"The Court:* And you just came out on parole the 16th of June this year, didn't you?

*"Defendant:* Yes, sir.

*"The Court:* Then you commit this present act of breaking and entering in the nighttime. You are becoming an habitual. If you get one more, you could go to prison for the rest of your life, do you know that?

*"Defendant:* Yes, sir.

*"The Court:* I don't know what it takes to slow you down. I have a real thick file here. Everything possible has apparently been done by the parole officers and law enforcement officers. They are not interested in riding you or trying to get you in prison again; they would much rather see you stay out of prison. But here you are, out in June, and you are back in the same old swing again. Frankly, I know you fellows have more or less of a code; you are not going to tell on anybody else. We know you know a lot of things you haven't told the officers. You are certainly true to your buddies. I am not going to ask you to 'rat' on them, in common parlance. I think if you would come clean with the officers and tell them everything, it might be better for you in the long run.

"If I don't give you a pretty good sentence this time, you are going to be in a position where you will probably have supplementals filed on you, and you would eventually be spending the rest of your life in prison. I don't want to see that happen to you, regardless of what you have done. Viewing

your record, this is the third one, and a violation of 'parole on every one that you had—several violations of parole, so I have got to send you back, and

"It is the sentence of this court that you be confined in Southern Michigan Prison for a period of not more than 15 years, or less than 7-1/2 years."

Philip A. Clancey was appointed to represent the defendant in post-conviction proceedings. On April 9, 1965, he filed a motion for a new trial, supported by his own affidavit in which he set forth that defendant at no time was advised that, if he had not sufficient funds with which to retain a lawyer, the court would appoint an attorney to represent him at county expense. The people do not contest this claim. However, Kenneth G. Mackness, assistant prosecuting attorney, filed a counter-affidavit in which he stated:

"(a) This defendant was well acquainted with criminal procedure having been twice before convicted of felonies; once of a breaking and entering in the nighttime, the same kind of violation as charged in this case, and forgery;

"(b) This defendant had previously, on at least 1 occasion, had counsel appointed for him at public expense, to-wit: Albert T. Washburne, attorney at law of Petoskey, Michigan, was appointed on September 14, 1954, by the Emmet county circuit court to represent this defendant on the charge of forgery, above referred to;

"(c) Psychological evaluations of this defendant have disclosed that he is of very superior intelligence, possessing an I. Q. of 126."

Circuit Judge Charles L. Brown, in denying the motion for new trial, found:

"Defendant's motion for new trial, brief in support thereof, counter-affidavits of the people, the transcript of arraignment, remarks of this court in

passing sentence, presentence reports of previous sentences received by defendant, and informations charging defendant with various crimes in the State of Michigan having been read and considered by this court, from which it conclusively appears that defendant while a juvenile was an inmate of the Michigan Boys Vocational School; that on September 17, 1952, he received a sentence of 25 months to 15 years for breaking and entering in the nighttime at St. Joseph county, Michigan; that on September 23, 1954, he received a sentence of 2 to 14 years for forgery at Emmet county, Michigan, at which time he was represented, at public expense, by A. T. Washburne, attorney at law of Petoskey, Michigan; that he was advised of his right to counsel by this court on arraignment in circuit court and at his arraignment in municipal court prior to his sentence in the instant case; that the presentence reports indicate he is possessed of superior intelligence and (well knew of his right to counsel at public expense) well knew the penalty for breaking and entering in the nighttime (having previously served a prison sentence for exactly the same offense, beginning on September 24, 1952); that he specifically stated he had not been influenced, forced, threatened or received any promises to induce him to plead guilty; that such plea was intelligently made and that this court may take judicial notice of its own records and the records of other Michigan courts of record in determining whether a defendant is familiar with court procedure. (See *Wisconsin* v. *Camara* [1965], 28 Wis 2d 365 [137 NW2d 1].)

"Having determined that defendant intelligently waived his right to jury trial and counsel and that he knew the nature and consequences of his plea of guilty, freely and intelligently made, his motion for new trial is hereby denied."

Application for delayed appeal was denied by the Court of Appeals on May 19, 1966. We granted leave. 378 Mich 733.

Defendant's attorney, in applying to this Court for leave, deposes that:

"Counsel is informed and verily believes the alleged incident took place in the daytime whereas respondent stands convicted of breaking and entering in the nighttime."

## I. The Court Rule.

Court Rule No 35A (1945) (318 Mich xxxix), which was in effect at the time of defendant's arraignment and sentence, provided, in part:

"In every prosecution wherein the accused is charged with a felony the trial court shall conform to the following practice:

"Sec. 1. Arraignment. If the accused is not represented by counsel upon arraignment, before he is required to plead the court shall advise the accused that he is entitled to a trial by jury and to have counsel, and that in case he is financially unable to provide counsel the court will, if accused so requests, appoint counsel for him. If the accused states he will procure counsel or requests that counsel be appointed, a reasonable time thereafter shall be allowed for counsel to consult with the accused before his plea shall be taken.

"Sec. 2. Imposing sentence. If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty and imposing sentence shall ascertain that the plea was freely, understandingly and voluntarily made, without undue influence, compulsion or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted."

The trial judge failed to inform the defendant "that in case he is [was] financially unable to provide counsel the court will [would], if accused so requests [requested], appoint counsel for him." Additionally, the court did not inform the accused of the nature of the accusation. The trial judge failed to conform to the requirements of the court rule.

I agree with Justice O'HARA's statement in his opinion in *People* v. *Dunn,* 380 Mich 693, 701, citing GCR 1963, § 529.1, and CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096), that "the fundamental inquiry is whether there has been a miscarriage of justice." The mere fact that there has been a failure to follow the court rule, in and of itself, does not result in reversible error, nor does the mere fact that the trial judge follows the court rule to the letter assure that no error is committed. It is the basic constitutional rights of a defendant with which we must be concerned. Unless clearly waived, the violation or loss of such rights does result in reversible error.

## II. WAIVER OF COUNSEL.

Defendant claims that, in addition to the court's failure to conform to the court rule, defendant was deprived of his constitutional right to counsel. The assistance of counsel to an indigent defendant in a criminal trial is a fundamental right essential to a fair trial and the denial of such assistance violates the Fourteenth Amendment. *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L Ed 2d 799, 93 ALR2d 733). In *Carnley* v. *Cochran* (1962), 369 US 506 (82 S Ct 884, 8 L Ed 2d 70), the United States Supreme Court examined the question of waiver of counsel in a situation where a defendant, an illiterate, was tried without counsel. Justice Brennan, writing for the Court, stated (p 513):

"But it is settled that where the assistance of counsel is a constitutional requisite, *the right to be furnished counsel does not depend on a request.* In *McNeal* v. *Culver* (1961), 365 US 109 (81 S Ct 413, 5 L Ed 2d 445), the petitioner's allegation that he had requested counsel was countered by a denial in the return that 'petitioner's constitutional rights were violated by the court's alleged refusal to appoint counsel in his behalf,' and the *State supreme court noted that the record was silent as to any request. We held that when the Constitution grants protection against criminal proceedings without the assistance of counsel, counsel must be furnished 'whether or not the accused requested the appointment of counsel. Uveges* v. *Pennsylvania* (1948), 335 US 437, 441 (69 S Ct 184, 93 L Ed 127).' 365 US, at 111, n. 1. See *Rice* v. *Olson* (1945), 324 US 786, 788 (65 S Ct 989, 89 L Ed 1367); *Gibbs* v. *Burke* (1949), 337 US 773, 780 (69 S Ct 1247, 93 L Ed 1686)." (Emphasis added.)

Contrary to the requirements of Court Rule No 35A (1945), it will be seen from the above passage that the burden of requesting counsel is not cast upon a defendant but, rather, the burden is placed upon the people of tendering counsel. The same must be intelligently and understandingly rejected, or, to quote *Carnley* again (p 516):

"*Presuming waiver from a silent record is impermissible.* The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (Emphasis added.)

In *Carnley,* the United States Supreme Court was addressing itself to the issue of "the unfairness of *trial* without counsel [emphasis added]." All of the above from *Carnley* goes primarily to the case of a defendant who is tried. With regard to a defendant

who pleads guilty, although not involved in *Carnley,* the Supreme Court (p 515) reviewed and reaffirmed its decision in *Rice* v. *Olson* (1945), 324 US 786 (65 S Ct 989, 89 L Ed 1367), saying:

"Even when there had been a guilty plea such an implication, treated as a conclusive presumption, was 'inconsistent with our interpretation of the scope of the Fourteenth Amendment,' and that 'A defendant who pleads guilty is entitled to the benefit of counsel, and a request for counsel is not necessary.' 324 US, at 788. However, we recognize in *Rice* v. *Olson* that, although the Fourteenth Amendment would not countenance any presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, *the entry of the guilty plea might have raised a fact issue as to whether the accused did not intelligently and understandingly waive his constitutional right.* We held that a hearing was required since the facts were in dispute." (Emphasis added.)

In the present case, the fact question as to whether defendant was deprived of his right to counsel or had waived such right was framed by the motion for a new trial and the counter-affidavit of Assistant Prosecuting Attorney Mackness. The conclusion of the trial judge that defendant intelligently waived his right to counsel is supported by the record. The judge specifically asked defendant: "Do you want a lawyer to represent you?" Defendant specifically said: "No." The nature of the charge against defendant, the record on arraignment, the uncontroverted counter-affidavit of the assistant prosecuting attorney, and the facts which were adduced upon hearing of defendant's motion for a new trial support the finding of the trial judge. With defendant's background, his prior criminal convictions and his intelligence, we believe he fully comprehended his right to counsel when asked by the judge if he

wanted a lawyer and would have made the request if he had wanted to be so represented. We conclude there was a knowing and intelligent waiver of counsel.

### III. Due Process in Arraignment and Sentencing

Finally, defendant claims that he was not afforded due process in his arraignment and sentencing. In support thereof, the assertion of the attorney for defendant is made in his deposition that "Counsel is informed and verily believes the alleged incident took place in the daytime whereas respondent stands convicted of breaking and entering in the nighttime." We regard this unsubstantiated allegation as wholly inadequate. Such an assertion, without any supporting data or reason for such belief, is entitled to little consideration. If there were nothing more, we would not reverse. Unfortunately, however, the trial judge not only failed to inform the defendant of the nature of the accusation made against him but he also failed to follow the requirements of the court rule that he, in examining the accused, "as a condition of accepting the plea of guilty and imposing sentence shall ascertain that the plea was freely, understandingly and voluntarily made." The purpose of this provision in the rule was stated in *People* v. *Barrows* (1959), 358 Mich 267, 272, where it was said:

"It is plain, however, that in this case the mandatory provisions of Rule No 35A were not complied with. The direct questioning of a defendant by the trial judge on plea of guilty is required by the rule for the purpose of establishing the crime and the participation therein of the person pleading guilty. *This is a precaution against involuntary or induced*

*false pleas of guilty, and against subsequent false claims of innocence."* (Emphasis added.)

As the record now stands, we have no way of knowing whether a plea to the accusation of breaking and entering in the nighttime should have been accepted by the trial judge because he did not make even a minimal examination of the accused as required by the rule and as interpreted by *People* v. *Barrows, supra.* This error in sentencing necessitates setting aside defendant's plea and sentence. The case should be remanded to the trial court for rearraignment of defendant and further proceedings consistent therewith.

Kelly, J. I cannot agree with my Brother's conclusion as expressed in division III of his opinion.

The transcript discloses that the information charged appellant with breaking and entering in the nighttime; that the information was read to defendant; that his right to counsel and his right to a jury trial were fully explained; that defendant unequivocally stated he did not wish to have a lawyer represent him, that he did not wish to have a jury trial, and that he wanted to plead guilty.

The record shows that the trial court, after accepting the plea of guilty, referred defendant to the probation officer with instructions to "give him the whole story, and we will try and figure out the fair thing to do."

The record further discloses that defendant cooperated at the presentence investigation, explaining how he gained access to the garage by breaking a window.

The record also shows that previous to sentencing, Hon. Charles L. Brown, circuit judge for the county of Grand Traverse, carefully reviewed the violation reports and manifested in every way a desire to protect the rights of the defendant.

Defendant-appellant's appeal to this Court offers absolutely nothing to sustain a claim that the breaking and entering occurred in the daytime and not in the nighttime.

The information, the record discloses, was not only read to defendant, which establishes a breaking and entering in the nighttime, but it also definitely shows that Judge Brown, before sentencing, called to defendant's attention the fact that he was pleading guilty to breaking and entering in the nighttime; that this was the second time he had pled guilty to breaking and entering in the nighttime; and that he cautioned defendant that he could become an habitual criminal if he persisted in such conduct in the future.

I agree with my Brother that " 'the fundamental inquiry is whether there has been a miscarriage of justice.' " I find no such miscarriage of justice and, therefore, affirm the trial court's denial of a motion for new trial.

DETHMERS, C. J., and BLACK, O'HARA, and BRENNAN, JJ., concurred with KELLY, J.

SOURIS, J. (*dissenting*). In this case defendant, although advised of his right to the assistance of retained counsel, was not advised, as then required by Court Rule No 35A (1945), see currently applicable GCR 1963, 785.3(1), that counsel would be appointed to assist him if he were too poor to retain his own counsel. Nor does this record disclose an express waiver of such assistance. See my opinions in *People* v. *Parshay* (1967), 379 Mich 7, 10, and *People* v. *Hobdy* (1968), 380 Mich 686, 692.

Furthermore, as in *People* v. *Dunn* (1968), 380 Mich 693, defendant was not advised of the consequences of his plea of guilty.

Finally, the circuit judge failed to examine the accused to determine that his plea was freely, understandingly, and voluntarily made, as required also by the cited rule.

For these multiple errors, without pausing to determine prejudice to defendant, I would vacate the sentence of conviction based on defendant's plea of guilty and remand to the circuit court for trial.

T. M. KAVANAGH, J., concurred with SOURIS, J.