PEOPLE *v.* COATES

Opinion of the Court

1. Criminal Law—Plea of Guilty—Defendant's Participation—Defendant's Recital.

A guilty plea is not always improperly accepted even though there is an absence in the record of a recital by the defendant of the events of the charged offense and his participation in them.

2. Criminal Law—Plea of Guilty—Factual Basis—Preliminary Examination—Appeal and Error.

Preliminary examination testimony may be properly reviewed in considering a claim that no factual basis existed justifying the acceptance of a defendant's plea of guilty.

3. Criminal Law—Plea of Guilty—Factual Basis.

Even though he was not directly questioned about the events of the crime and the defendant's participation in them, where there was eyewitness testimony at the preliminary examination, the information which was read to defendant at his arraignment was specifically worded, the elements of the crime of armed robbery, the crime charged, are uncomplicated, and the court questioned the defendant about his guilt, a substantial factual basis for the acceptance of the defendant's guilty plea existed.

4. Criminal Law—Sentencing—Right to Counsel—Effect.

The denial of the right to counsel at the time of sentencing is a ground only for remanding for resentencing with counsel present.

Dissent by Levin, J.

5. Criminal Law—Plea of Guilty—Factual Basis—Direct Questioning.

*Failure of trial judge to question a guilty-pleading defendant directly regarding the crime charged and the defendant's participation in the crime requires reversal of the defendant's conviction and remandment for trial.*

References for Points in Headnotes

[1–3, 5–12] 21 Am Jur 2d, Criminal Law §§ 484, 485, 492.
[4] 21 Am Jur 2d, Criminal Law § 529.

6. CRIMINAL LAW—PLEA OF GUILTY—FACTUAL BASIS—DIRECT QUESTIONING—PRELIMINARY EXAMINATION.

   *A trial judge must directly question a guilty-pleading defendant regarding the crime and the defendant's participation in its commission and ascertain the truth of the guilty plea, the fact that a preliminary examination was held or that a preliminary examination transcript exists does not adequately substitute for direct questioning of a guilty-pleading defendant by the trial court.*

7. CRIMINAL LAW—PLEA OF GUILTY—FACTUAL BASIS—PRELIMINARY EXAMINATION TRANSCRIPT—LIMITED USE.

   *The preliminary examination transcript and other information not a part of the plea-taking proceeding may be used to establish the necessary factual basis for the acceptance of a guilty plea only in cases of long-delayed appeals or in cases where the trial judge made a conscientious effort to comply with the rule requiring direct questioning of a defendant to establish the crime and the defendant's participation in it, but has overlooked establishing a necessary element of the crime.*

8. CRIMINAL LAW—PLEA OF GUILTY—FACTUAL BASIS—DIRECT QUESTIONING—PRELIMINARY EXAMINATION TRANSCRIPT.

   *A preliminary examination transcript is not an adequate substitute for the direct questioning of a defendant to establish the truthfulness of the plea, because in many cases the transcript will not be typed before the guilty plea is taken and, even if it is, it is most unlikely that the trial judge will read it; a trial judge unwilling to devote a few minutes to direct questioning of an accused is unlikely to find time to read a transcript which, however short, will usually take longer to read than the questioning would take.*

9. CRIMINAL LAW—PLEA OF GUILTY—DIRECT QUESTIONING—PURPOSE.

   *Direct questioning of a guilty-pleading defendant is required as a precaution against involuntary or induced false pleas of guilty, and against subsequent false claims of innocence.*

10. CRIMINAL LAW—PLEA OF GUILTY—TRUTHFULNESS—COURT'S DUTY.

    *The trial judge, before a judgment of conviction based on a plea of guilty may be entered, must determine whether he has reason to doubt the truth of the plea; if judge doubts the truth of the plea, he has a duty to set aside the plea.*

11. Criminal Law—Plea of Guilty—Direct Questioning—Pre-
liminary Examination Transcript—Appeal and Error.
   *Reliance by appellate courts on a preliminary examination trans-
   script as evidence that the trial judge did in fact ascertain
   the truth of the defendant's guilty plea is illusory where it
   is apparent that the trial judge never looked at the transcript.*

12. Criminal Law—Plea of Guilty—Factual Basis.
   *A plea of guilty may be accepted even though the defendant
   is unsure of his guilt and even though the defendant denies
   his guilt where, after careful inquiry, the trial judge satisfies
   himself there is a substantial factual basis for the plea and
   that the plea represents a well-considered and well-advised
   choice by the defendant.*

Appeal from Oakland, William John Beer, J.
Submitted Division 2 November 10, 1969, at Lansing.
(Docket No. 6160.)    Decided March 29, 1971.

Marshall Coates was convicted, on his plea of
guilty, of armed robbery. Defendant appeals. Af-
firmed and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Thomas G. Plunkett,*
Prosecuting Attorney, *Dennis Donohue,* Chief Ap-
pellate Counsel, and *Bruce T. Leitman,* Assistant
Prosecuting Attorney, for the people.

*Milton R. Henry,* for defendant on appeal.

Before: Levin, P. J., and T. M. Burns and Dan-
hof, JJ.

Danhof, J. Defendant was charged with armed
robbery, CLS 1961, § 750.529 (Stat Ann 1969 Cum
Supp § 28.797). A plea of guilty to the charge was
accepted by the trial court and defendant was sen-
tenced to a term of 4 to 16 years in prison. Defend-

ant has appealed as of right praying for a new trial on two grounds:

(1) That the trial judge did not comply with the requirements of CL 1948, § 768.35 (Stat Ann 1954 Rev § 28.1058), and GCR 1963, 785.3 in that, before accepting the defendant's guilty plea and sentencing, he did not, by direct questioning of the defendant, ascertain the truth of the plea by establishing the crime and the defendant's participation in its commission as required by *People* v. *Barrows* (1959), 358 Mich 267, and *People* v. *Perine* (1967), 7 Mich App 292;

(2) That the defendant was denied his right to be represented by counsel at the time of his sentencing.

The record shows that an armed robbery occurred on October 16, 1967, for which defendant and a man named Greenblatt were subsequently arrested. On November 9, 1967, a preliminary examination was held at which the victim, night clerk in a motel, unequivocally identified the defendant as one of the two men who robbed him and as the one who shot him with a small gun that looked like a Beretta. The victim testified that the two robbers were in the office area two or three minutes and that he took a good look at both of them. On cross-examination by defendant's counsel, the victim testified that he also worked as a full-time animal keeper at the Detroit zoo, that guns were a hobby of his, and that he was quite positive that one of the weapons used was a Beretta.

On November 22, 1967, defendant was arraigned. The information was read to him. It stated in part:

"Marshall Coates late of the city of Ferndale in said county, heretofore to-wit, on or about the 17th day of October A.D. 1967 at the said city of Ferndale in said county, while armed with dangerous

weapons or articles used or fashioned in a manner to lead the person so assaulted to reasonably believe them to be dangerous weapons, to wit: a .32-caliber automatic and a .22-caliber revolver, did assault one Thomas J. Watson and did feloniously rob, steal and take from the person of Thomas J. Watson or in the presence of said Thomas J. Watson certain property which may be the subject of larceny, to-wit: United States currency in the amount of $60, contrary to Section 750.529, of the Compiled Laws of 1948 as amended: M.S.A. section 28.797 as amended. (*Maximum penalty—Life*)"

The following colloquy then occurred:

"*The Court:* How do you plead?
"*Mr. Coates:* I stand mute.
"And I would like to ask for an adjournment because my lawyer is not here.
"*The Court:* Who is your lawyer?
"*Mr. Coates:* Arnold Fink.
"*The Court:* Is his appearance in the file?
"*Mr. Pantel (Assistant Prosecuting Attorney):* No.
"Your Honor, it is my understanding that he did represent the defendant at the examination level, but we do not have an appearance at the circuit court level.
"*The Court:* The court must direct the plea of not guilty, under the law, for you."

On January 16, 1968, defendant with his attorney present pleaded guilty to armed robbery. The transcript reads in part:

"*Mr. Fink:* Your Honor, at this time, we wish to change our plea—the plea being standing mute, or not guilty at the arraignment on the information—we wish to plead guilty as charged.
"*The Court:* Is Mr. Arnold Fink your lawyer?
"*Mr. Coates:* Yes, he is, your Honor.

*"The Court:* And did you hear what he said, that you wished to plead guilty to this charge of robbery armed?

*"Mr. Coates:* Yes, I did.

*"The Court:* Has he explained to you that if I accept this plea, that it is possible that I could send you to state prison for any number of years up to life? Has he explained that to you?

*"Mr. Coates:* Yes, he has.

*"The Court:* Now, has anybody hurt you or harmed you in any way since you have been taken into custody and then released on bond, and been charged, to induce you to make this plea?

*"Mr. Coates:* No, they haven't.

*"The Court:* Did anybody tell you that if you plead guilty that you might get off easy in some way or get a reward?

*"Mr. Coates:* No, they haven't.

*"The Court:* Now, do you plead guilty, then, because you are guilty of the charge of armed robbery? Is that correct?

*"Mr. Coates:* Yes, I do, your Honor.

*"The Court:* Do you understand that you do not have to plead guilty, that you can have a trial by jury and that Mr. Arnold Fink stands ready to represent you? And if you do not wish a jury trial, you can be tried by the court alone? Do you understand that?

*"Mr. Coates:* Yes, I do.

*"The Court:* You understand that if I accept the plea of guilty, there will be no trial?

*"Mr. Coates:* Yes, I do.

*"The Court:* Have you fully advised him of all his constitutional rights, Mr. Fink?

*"Mr. Fink:* Yes, I have, your Honor.

"I would also like to state for the record, I have conferred with Mr. Coates last night, this morning, and this afternoon. I believe I have fully advised him of all his constitutional rights and may state emphatically that Mr. Coates is pleading guilty as

charged for the sole reason that he is in fact guilty, so being advised of all his constitutional rights.

"*The Court:* Well, of course, Mr. Coates, if a person is charged with crime and if the person knows in their mind and heart that they are guilty of that crime, the first step in the right direction then, after having conferred with your counsel, is to plead guilty. I emphasize that the first step in the right direction is to do what you are trying to do at this time.

"I am going to accept your plea of guilty.

"And I am going to refer your case to the presentence investigating department called the Probation Department, for sentence February 26, at 2 o'clock in the afternoon.

"Do you understand that?

"*Mr. Coates:* Yes, sir."

On February 26, 1968, the defendant failed to appear for sentencing and his bond was forfeited and a bench warrant issued. He was arrested on June 13, 1968, in Detroit, Michigan.

On July 3, 1968, defendant was sentenced. He was apparently in the process of changing lawyers and neither his trial counsel nor his appellate counsel was present.

Defendant admits in his brief to this Court that the trial judge "made every effort to establish the free and voluntary nature of appellant's plea below". Defendant does not even now claim that he was innocent of the charge to which he pleaded guilty. Nor is this a case of plea bargaining where defendant pleaded guilty to a lesser crime than that with which he was charged. Rather, defendant seeks a new trial based on omissions in the trial judge's questioning of him which defendant thinks the appellate courts of this state require. Specifically, defendant contends that the trial judge did not establish a factual basis in support of the truth

of the guilty plea by direct questionng of the defend-
ant.

The major case relied on in support of the posi-
tion that a trial judge must question the defendant
regarding the acts constituting the crime before
accepting the guilty plea is *People* v. *Barrows, su-
pra*. However, it is doubtful that that is what the
*Barrows* case actually held. In that case the defend-
ant was young, only 19, it was his first experience
with a criminal court, his guilty plea was entered
by his attorney, and the defendant was not directly
questioned with regard to it by the judge. Further,
he protested his innocence at every point when given
an opportunity to do so and also protested his inno-
cence on appeal.

On the authority of the *Barrows* decision, more is
required than that the defendant agree with his
attorney that it is expedient to plead guilty. There
must be a reasonable ascertainment of the truth of
the guilty plea. This is accomplished by the direct
questioning of the defendant by the trial judge.
The purpose of this direct questioning is to estab-
lish the crime and the participation therein of the
defendant as a precaution against involuntary or
induced false pleas of guilty and against subsequent
false claims of innocence.

However, it is arguable that a trial judge has met
the requirement of the *Barrows* case concerning di-
rect questioning of a defendant for the purpose of
establishing his participation in the crime when the
trial court asks the defendant if he is pleading guilty
because he is in fact guilty of the crime with which
he is charged and the defendant answers yes. A
decision on the merit of that argument is not essen-
tial to the disposition of the appeal before us.

Certainly the recent trilogy of Michigan Supreme
Court cases, *People* v. *Dunn* (1968), 380 Mich 693,

*People* v. *Stearns* (1968), 380 Mich 704, and *People*
v. *Winegar* (1968), 380 Mich 719, make it clear that
reviewing courts should be concerned with sub-
stance, not form, and the fundamental inquiry is
whether there has been a miscarriage of justice.
Specifically, we note that in the *Stearns* case use
was made of the information which was read to
defendant and the presentence investigation at
which defendant cooperated to establish a factual
basis in support of the truth of the guilty plea.
Similarly, in the *Winegar* case, the Court held that
there was no miscarriage of justice where the record
showed that the court had conferred with the defend-
ant in chambers and was convinced that he com-
mitted the crime, but there was no verbatim tran-
script of the colloquy between the court and the
defendant regarding the circumstances of the crime.

The *Perine* case, *supra,* relied on by defendant
was decided before the *Dunn, Stearns,* and *Winegar*
cases. Additionally, it may be distinguishable fac-
tually since the opinion states that defendant's attor-
ney waived a reading of the information.

Since *Perine,* this Court has held that the absence
of a recital on the record of the events in the defend-
ant's own words is not always fatal. *People* v.
*Seifert* (1969), 17 Mich App 187. It has also held
that we may properly look at the preliminary exam-
ination testimony in considering a claim that there
was not a factual basis justifying acceptance of a
plea of guilty. *People* v. *Bartlett* (1969), 17 Mich
App 205.

In the case before us, after considering the eye-
witness testimony at the preliminary examination,
the specific wording of the information which was
read to defendant at his arraignment, the essentially
uncomplicated elements of the crime of armed rob-
bery, and the direct questioning of the defendant by

the court at the time defendant entered his plea of guilty, it is our opinion that the trial court had a substantial factual basis for accepting the proffered plea of guilty, and that defendant might well have been convicted upon a trial. Therefore, defendant is not entitled to a new trial.

Regarding defendant's second issue, the right to counsel at the time of sentencing, this is grounds only for remanding for resentencing with counsel present, *People* v. *Dye* (1967), 6 Mich App 217, *People* v. *Jones* (1967), 6 Mich App 221. Therefore, we remand this case for resentencing with counsel for defendant present.

T. M. BURNS, J., concurred.

LEVIN, P. J. (*dissenting*). I dissent because the trial judge made no effort whatsoever to comply with the *Barrows* rule requiring a judge, before accepting a plea of guilty, to establish by "direct questioning" of the defendant "the crime and the participation therein of the person pleading guilty."[1]

Our Court has repeatedly and consistently recognized that the *Barrows* rule is still viable.[2] In many cases decided after *Dunn, Stearns,* and *Winegar*,[3] we have reversed convictions because a plea of guilty was accepted without complying with the *Barrows* rule.[4]

---

[1] *People* v. *Barrows* (1959), 358 Mich 267, 272.

[2] *People* v. *Perine* (1967), 7 Mich App 292; *People* v. *Richard E. Johnson* (1967), 8 Mich App 204; *People* v. *Stewart* (1968), 10 Mich App 553; *People* v. *Mason* (1968), 13 Mich App 277; *People* v. *Combs* (1968), 15 Mich App 450; and cases cited in fn 4, *infra.*

[3] *People* v. *Dunn* (1968), 380 Mich 693; *People* v. *Stearns* (1968), 380 Mich 704; *People* v. *Winegar* (1968), 380 Mich 719.

[4] *People* v. *Gerald Jackson* (1971), 30 Mich App 173; *People* v. *Beverly Haywood* (1970), 27 Mich App 365; *People* v. *Lokatys* (1970), 23 Mich App 633; *People* v. *Thouin* (1970), 24 Mich App 483; *People* v. *Shell* (1970), 23 Mich App 593; *People* v. *Stoner* (1970), 23 Mich App 598; *People* v. *Porchia* (1970), 21 Mich App 222; *People* v. *Moore* (1970), 21 Mich App 126; *People* v. *Hooper* (1969), 20 Mich App 560.

Moreover, the trial judge in the present case could not have relied on *Dunn, Stearns,* and *Winegar,* because those cases were decided after he accepted Coates' plea of guilty.

Stearns and Winegar were convicted and sentenced in 1961, Dunn in 1962—six and seven years before their cases were decided by the Michigan Supreme Court. In the present case, Coates was convicted in 1968. There is a natural reluctance—which I share—to set aside old guilty pleas. Belated reversal imposes considerable burdens on the prosecution, without any necessary current benefit in raising standards in the administration of justice.[5]

*Stearns, Winegar,* and *Dunn* were delayed appeals. This case comes to us on direct appeal.

## I.

It will be an unusual prosecution that does not have some tenable factual basis, and a rare case where an accused person is willing to plead guilty to an offense he did not commit, unless, of course, he is guilty of a more serious offense. The majority and I are, I think, nevertheless, in agreement that even though an accused person is willing to plead guilty, neither the fact of prosecution nor his willingness to plead guilty will support a conviction unless a factual basis is independently established.

My colleagues are willing, in those cases where there is a preliminary examination, that the factual basis be established by the testimony of those of

Cases recognizing the *Barrows* rule to be in force where the conviction was affirmed include *People* v. *Anderson* (1970), 28 Mich App 604; *People* v. *Herbert Sanders* (1970), 28 Mich App 274; *People* v. *Webb* (1970), 27 Mich App 339; *People* v. *Sylvester Johnson* (1970), 25 Mich App 258; *People* v. *Wade* (1970), 24 Mich App 518.

[5] But see *People* v. *Shell, supra, People* v. *Lokatys, supra* fn 4, decided in 1970, and *People* v. *Combs, supra* fn 2, decided in 1968, reversing 1958 (pre-*Barrows*) guilty-plea-based convictions.

the people's witnesses who testify at the preliminary examination. In such a case they would not require that the judge examine the defendant concerning the facts even though there is no showing that the judge himself read the preliminary examination transcript.

In my opinion, the *Barrows* requirement that the judge directly question the defendant concerning the facts and ascertain the truth of the plea should be enforced. It should not be enough that there was a preliminary examination and, if the defendant appeals, a transcript of that examination can be produced for the edification of the appellate courts; that is not an adequate substitute for the trial judge informing himself of the facts by directly questioning the defendant.

## II.

In cases of long-delayed appeal or where the judge makes a conscientious effort to comply with the *Barrows* requirement and overlooks establishing an element of the crime before accepting the guilty plea, we have countenanced the resort to other information, not a part of the plea-taking proceeding, to establish the necessary factual basis for the plea.

In *People* v. *Seifert* (1969), 17 Mich App 187, a pre-*Barrows* case, the facts of the defendant's commission of the offense were fully set forth on the record at the time of sentencing.[6]

In *People* v. *Bartlett* (1969), 17 Mich App 205, 214, 215, the judge accepted a plea of guilty to the offense of unarmed robbery. He questioned the defendant thoroughly and it was established that the defendant had committed a larceny. The judge omitted to establish through the testimony of the

---

[6] See, also, *People* v. *Watson* (1970), 22 Mich App 703; *People* v. *Dickerson* (1970), 23 Mich 621.

defendant that the larceny had been accomplished by an assault upon the victim, constituting the offense of robbery. We relied on the preliminary examination to supply this ingredient. There was a reason for Bartlett to hold back in his responses. He had bargained for a reduction of a charge of armed robbery to unarmed robbery. If he had responded to the judge's questions with a statement of the facts related by the witnesses at the preliminary examination he would have established that he was guilty of the more aggravated offense. Recognizing the reluctance of guilty-pleading defendants to state all the facts in those circumstances, we concluded that we could properly rely on the preliminary examination record in affirming Bartlett's conviction of unarmed robbery.[7] We said, pp 214, 215:

"To reverse automatically for any and every failure to comply with such court rule imposed requirements might well in the long run prove self-defeating. If reversal were automatic, then in order to protect convictions based upon guilty pleas, trial judge examination of guilty pleaders would tend to become stereotyped, and technical compliance would appear to some to be more important than the substance of the matter. A trial judge can justifiably be expected to comply with the court rules but if he makes a good-faith effort to do so and the purpose sought to be attained by the examination of the accused has been achieved—as is clearly true in this case—it would be more destructive than preservative of the judicial process to reverse as a matter of course for noncompliance with the court rule."

Subsequently, in *People* v. *Williams* (1970), 23 Mich App 459, we pointed out that *Barrows* was

[7] Similarly, see *People* v. *Sylvester Johnson* (1970), 25 Mich App 258.

the first modern case[8] clearly reiterating and re-affirming the requirement that the judge directly question a guilty-pleading defendant for the purpose of establishing that a crime had been committed and that he participated in its commission. We declared, relying on *Seifert* and *People* v. *Combs* (1968), 15 Mich App 450, that in a case where a plea of guilty was accepted before November 25, 1959, the date on which *Barrows* was decided, we may properly rely on preliminary examination testimony to show the necessary factual basis and that a failure in such a case of the trial judge to have questioned the defendant regarding his participation in the commission of the crime does not require that his plea of guilty be set aside.

I recognize that there is apparent inconsistency in requiring direct questioning by the judge and yet allowing resort to a preliminary examination transcript to establish a factual basis in pre-*Barrows* cases and in cases where there has been an effort by the judge to learn the facts by questioning the defendant but the factual basis established upon such questioning is incomplete and does not make out all the elements of the crime.

Efforts to improve the quality and raise standards in the administration of justice are, however, sometimes impeded by an insistence on applying a newly-established or newly-enforced standard in cases where the judgments of conviction have long ago become final.[9] Those efforts are also sometimes

---

[8] Although I have referred to the direct questioning requirement as the *Barrows* requirement, actually its origin is an old statute still in force. See *Edwards* v. *People* (1878), 39 Mich 760; MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058); *People* v. *Rufus Williams* (1970), 23 Mich App 459, 465, fns 7 and 8 and accompanying text.

[9] Whether a particular new or rejuvenated standard should be applied to old cases is a matter of judgment. Having in mind the difficulty of now prosecuting a case where the plea of guilty was accepted before *Barrows* was decided (*i.e.*, a plea accepted before November 25, 1959), it would be disproportionate in those pre-

impeded by a rigid and inflexible application of the improved standard in current cases. Unless the *Barrows* direct-questioning requirement is enforced with sufficient flexibility to make allowances for inadvertent oversight by a conscientious judge and for those cases where guilty pleas were taken before *Barrows* was decided, the likelihood is that pressure from the trial bench and the reality of the number of convictions that would be reversed and cases retried, adding to the backlog of our overburdened trial courts, would erode the direct questioning requirement altogether. A pragmatic philosopher cautioned us that "the best is the enemy of the good."[10]

The exigencies which justify our resort to a preliminary examination transcript and other information in a case of delayed appeal or in a case where the judge has made a conscientious effort to question the accused person and the recital is incomplete do not obtain in the present case. Here there was no direct questioning whatsoever of the accused as to his participation in the crime; here the appeal is direct, not delayed and on leave granted. If we do not remand this case because of the judge's failure to comply with the *Barrows* rule, then we might as well announce that the *Barrows* rule will not be enforced—compliance by the trial judge is optional —in cases where the defendant is bound over after a preliminary examination.[11]

---

*Barrows* cases where a preliminary examination transcript discloses a factual basis for the plea of guilty to now set aside the conviction because of a failure to question the defendant directly concerning the facts.

[10] Voltaire, Dictionnaire Philosophique, Art Dramatique (The Oxford Dictionary of Quotations [2d ed], p 557).

[11] Unfortunately this case of *Coates* is not the only case where the *Combs-Bartlett* (preliminary examination transcript) exception has been extended to justify affirmances of recent guilty pleas even though, in contrast with *Combs* and *Bartlett,* there was a total failure to comply with the *Barrows* requirement. See *People* v. *Seales* (1970), 26 Mich App 364; *People* v. *Donald T. Moore* (1970), 21 Mich App 150.

## III.

A preliminary examination transcript is not an adequate substitute for direct questioning. In many cases it will not be typed before the plea is taken and, even if it is typed, it is most unlikely that the judge will read it. A judge who is not willing to devote a few minutes (usually less than three minutes will suffice) to direct questioning of an accused person concerning the facts is not likely to find time to read a transcript which, however short, will usually take at least ten minutes and sometimes an hour or more to read.

The purpose of direct questioning by the judge was cogently expressed in *Barrows* (p 272):

"This is a precaution against involuntary or induced false pleas of guilty, and against subsequent false claims of innocence."

Similar considerations were recently expressed by the United States Supreme Court in *McCarthy* v. *United States* (1969), 394 US 459, fn 4, 462, 463, 467, 468, 472 (89 S Ct 1166, 1169, 1171, 1174, 22 L Ed 2d 418, 423, 426, 428). There the Court considered F R Crim P, 11, which requires that before accepting a guilty plea the court address "the defendant personally and determin[e] that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea" and that, "The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." The Court observed:

"Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge

but without realizing that his conduct does not
actually fall within the charge.'

"To the extent that the district judge thus exposes
the defendant's state of mind on the record through
personal interrogation, he not only facilitates his
own determination of a guilty plea's voluntariness,
but he also facilitates that determination in any
subsequent post-conviction proceeding based upon
a claim that the plea was involuntary. Both of these
goals are undermined in proportion to the degree
the district judge resorts to 'assumptions' not based
upon recorded responses to his inquiries."

The Court concluded that noncompliance was re-
versible error entitling the defendant to plead anew,
saying that this would not only "insure that every
accused is afforded those procedural safeguards, but
also will help reduce the great waste of judicial
resources required to process the frivolous attacks
on guilty plea convictions that are encouraged, and
are more difficult to dispose of, when the original
record is inadequate."

Although *McCarthy* is based on a construction of
a Federal rule and the United States Supreme Court
expressly said that it did not reach any of the con-
stitutional arguments advanced in that case, *Bar-
rows,* which anticipated the *McCarthy* reasoning, is
binding on us.

In *People* v. *Gerald Jackson* (1971), 30 Mich App
173, the interrogation was conducted by the defend-
ant's attorneys in the presence of the judge. In
reversing the guilty-plea-based convictions, we
declared:

"This court rule states that *'the court shall exam-
ine the accused'* in regard to the matter set out
above. The written form[12] and the interrogation by

---

[12] In the cited case, before pleading, the defendants and their
attorneys completed and presented to the court a printed form,
furnished by the court, stating the defendants' responses to a

the attorney cannot be substituted for the examination by the judge himself because such a practice leaves itself too easily open to perpetuation of the evil which GCR 785.3 was designed to prevent—that is, contrived, rehearsed and, hence, involuntary or false pleas, in that a defendant may agree to go along with his attorney on matters which he might hesitate to affirm if answering to a judge.

"This examination should and must be conducted by the judge. *People* v. *Barrows* (1959), 358 Mich 267." (Emphasis by the Court.)[13]

## IV.

The law of Michigan requires, before a judgment of conviction based on a plea of guilty may be entered, that the judge must determine whether he has "reason to doubt the truth of such a plea of guilty."[14] If he does, it then becomes his "duty" to set aside the plea.

"Michigan's rule on acceptance of pleas requires that the court ascertain more about the plea than that the defendant agrees that it is expedient to so plead. The rule is designed to require reasonable ascertainment of the truth of the plea." *People* v. *Barrows* (1959), 358 Mich 267, 272.

We look for a factual basis for the plea in the plea-taking record in part to satisfy ourselves that, before causing judgment to be entered on a defendant's plea of guilty, the judge did in fact ascertain its truth as the law requires. It is illusory to rely on a transcript of a preliminary examination as

number of inquiries by the court concerning their prospective pleas of guilty.

13 Similarly, *McCarthy* v. *United States* (1969), 394 US 459, 467 (89 S Ct 1166, 1171, 22 L Ed 2d 418, 426), where the United States Supreme Court declared: "we reject the Government's contention that Rule 11 can be complied with although the district judge does not personally inquire whether the defendant understood the nature of the charge."

14 MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058).

evidence that the judge did in fact ascertain the truth of the plea when it is apparent that he never looked at the transcript.[15]

## V.

Direct questioning enables the judge to determine how the defendant views the facts. By the defendant's answers to the judge's questions, the judge, a trained observer, can himself appraise whether the plea is, indeed, a truthful plea. It permits the judge, who will be sentencing the defendant, to get the feel of the situation.

Direct questioning of the defendant is informative; it permits the judge to satisfy himself as to the substantiality and justification for the prosecution and that it is consistent with the sound administration of justice to permit the defendant to plead guilty. This does not mean that the judge must decide that the defendant is guilty before he agrees to accept the plea. Indeed, a plea of guilty may be accepted even though the defendant is unsure of his guilt and even where he denies his guilt if after *careful* inquiry the judge satisfies himself that there is a substantial factual basis for the plea and that the plea represents a well-considered and well-advised choice by the defendant.[16]

---

[15] Reliance on the preliminary examination transcript in pre-*Barrows* cases and in cases where there is some factual basis in the record, albeit incomplete, is subject to the same objection. However, for reasons already stated, in pre-*Barrows* cases we may properly make allowances for the fact that *Barrows* was the first modern case reaffirming the direct-questioning requirement. Similarly, as to the incomplete record cases; we can properly distinguish between (i) a case where a judge makes a conscientious effort to ascertain the truth of the plea and the omission may have been inadvertent or because a plea-bargaining defendant was holding back in his account and (ii) a case where the judge makes no inquiry at all.

[16] See *People v. Stoner* (1970), 23 Mich App 598, 607; *Griffin v. United States* (1968), 132 App DC 108 (405 F2d 1378); *North Carolina v. Alford* (1970), 400 US 25 (91 S Ct 160, 27 L Ed 2d 162). Contrast *People v. Blewett* (1969), 18 Mich App 327, reversed (1969), 382 Mich 793, without opinion, apparently for noncompliance

To whittle away at the *Barrows* rule is unwise. It tends to reduce standards in Michigan at a time when an effort is being made nationally to raise standards in the taking of guilty pleas in recognition of the importance of the guilty plea as the means by which most criminal cases are disposed of and most convictions are obtained.[17]

---

with MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058) (see text accompanying fn 14, *supra*), where the defendant equivocated and the record did not show a careful inquiry by the judge either as to whether the defendant did in fact wish to plead guilty or that his plea was a well-considered and well-advised choice.

In *Stoner,* we said that a guilty plea may be accepted in a case where the defendant is unsure of his guilt. There the defendant claimed he was intoxicated at the time the offense was committed. we said that a plea of guilty to a lesser offense might be a sound choice in a case where intoxication is not a defense (it is a defense only to specific intent crimes; see *People* v. *Kelley* [1970], 21 Mich App 612) or in a case where there is substantial evidence of guilt and as well that the defendant was not intoxicated.

In *Griffin* the defendant claimed self-defense but was willing to plead guilty to manslaughter rather than face possible conviction of second-degree murder. The United States Court of Appeals for the District of Columbia held that it was error to refuse to accept Griffin's tendered plea of guilty (offered with the government's approval) and reversed his conviction of second-degree murder.

In *Alford* the United States Supreme Court held that a plea of guilty to second-degree murder may be accepted from a defendant charged with first-degree murder even though he protests his innocence. The Court said that "the record before the judge contains strong evidence of actual guilt." The Court declared that the Constitution does not bar acceptance of a guilty plea from an accused person "who, faced with grim alternatives, is willing to waive his trial and accept the sentence" for a lesser charge. The dissenters did not disagree; they would have reversed because "the decision to plead guilty was not voluntary but was 'the product of duress.'" The dissenters are obviously correct; in North Carolina first-degree murder is punishable by death.

However, as long as we permit plea bargaining and prosecutors, although willing to accept a plea of guilty to a lesser charge, refuse to reduce the charge to the lesser charge unless the defendant pleads guilty (for my views see *People* v. *Byrd* [1968], 12 Mich App 186, 194), it would be sanctimonious to prevent a defendant from making a well-advised choice to plead guilty to a lesser charge unless he is also willing to stultify himself.

[17] In this connection, it is relevant that the proposed American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, § 1.6, p 30, would require a judge who accepts a guilty plea to establish a factual basis for the plea. The President's Task Force Report: The Courts, makes a similar suggestion, p 13. See, also, Newman, Conviction, The Deter-

We should set aside this guilty plea and thereby demonstrate that there is a proper minimum standard which the appellate courts of this state will insist upon both for the protection of accused persons and also in the hope that we may thereby reduce the large number of appeals from guilty pleas, many of which could be avoided or more easily disposed of if all trial judges would comply with the simple requirements which have long been established in this state and which most trial judges, to their credit, routinely observe.

I recognize that we can, as was carefully done by my colleagues in this case, examine the entire record in every defective plea case and by inference and extrapolation make an *ad hoc, ad hominem* determination whether a particular defective guilty plea should stand.[18] The preliminary examination testimony, the sincerity of the judge, the lack of plea bargaining, are all factors which support the decision of my colleagues. I do not, however, think that we should have to so struggle with these cases. Highly subjective case-by-case analysis and judgment can be avoided and our time better employed if all trial judges were required to obey the rules.

I would reverse the conviction and remand for trial.

mination of Guilt or Innocence Without Trial (1966); *Muzzi* v. *State* (Del, 1970), 265 A2d 31; *Ernst* v. *State* (1969), 43 Wis 2d 661 (170 NW2d 713).

18 My colleagues mention as a factor defendant Coates' failure to claim that he is innocent of the charge to which he pled guilty. To require such an allegation would simply add a formal element to the papers filed by a guilty-pleading defendant who appeals his conviction. Moreover, it is difficult to visualize how the allegation of innocence should be required to be made—whether by the defendant from prison by letter to our Court or to his attorney; or in the brief filed by the defendant's attorney who ordinarily has no personal knowledge of the defendant's guilt or innocence.

It is noteworthy that in the cases decided by our Court cited in fns 2 and 4, reversing convictions based on guilty pleas for failure of the trial court to comply with the *Barrows* requirement, no reference was made in the opinions to any allegation of innocence. The no-claim-of-innocence argument is a makeweight.